288 N.J. Super. 407 (1996)
672 A.2d 742
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DAVID H. PARKS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 13, 1996.
Decided March 18, 1996.
*408 Before Judges SKILLMAN and PAUL G. LEVY.
Walter A. Risi argued the cause for appellant (Plick & Risi; attorneys, Mr. Risi, on the brief).
Joseph Connor, Jr., Assistant Prosecutor, argued the cause for respondent (W. Michael Murphy, Jr., Morris County Prosecutor, attorney; Mr. Connor, on the brief).
The opinion of the Court was delivered by PAUL G. LEVY, J.A.D.
In this matter we consider when a police officer can make an investigatory stop of a motor vehicle driver when a police mobile *409 data terminal reveals that the license of the owner of the vehicle has been suspended.
The State and the defendant stipulated the following factual events leading to the issuance of two motor vehicle summonses to defendant. On July 31, 1994, at approximately 7:49 a.m., defendant was driving a 1984 Chevrolet station wagon. Although Police Officer Yarzab, who was following the vehicle, observed no violations of law, he checked the registration (license plate) of the car in his police computer. He learned the vehicle was registered to David Parks; David Parks' driver's license was suspended; David Parks was born in 1961, was in weight class six,[1] was five feet eight inches tall, and was a male. The officer did not recognize the driver of the vehicle and had no prior familiarity with Parks, but was able to see the driver from the shoulders up as he followed in his patrol car. From that viewpoint, he believed there was a "general match" to the information revealed by the computer in that the driver was approximately the right age, right weight and right height.
Officer Yarzab stopped the station wagon and the driver (defendant), upon inquiry from the officer, admitted his license was suspended. He also failed to produce proof of insurance. Summonses were then issued for driving with a suspended license, in violation of N.J.S.A. 39:3-40, and driving without insurance, in violation of N.J.S.A. 39:6B-2.
After the municipal judge denied his motion to dismiss the charges, defendant was convicted of each charge. He appealed to the Law Division and again moved to dismiss, but the Law Division judge denied the motion and defendant was again convicted. He was sentenced to pay appropriate fines, serve a term of community service and his driver's license was further suspended for an aggregate of two years.
*410 Defendant concedes the computerized lookup of the records from the Division of Motor Vehicles (DMV) was not an unconstitutional intrusion of his privacy because vehicle license plates are openly displayed and the records are public. See N.J.S.A. 39:3-33; N.J.S.A. 47:1A-2. We agree that this use of a mobile data terminal does not interfere with a driver's reasonable expectation of privacy and does not constitute an unreasonable seizure of either the driver or his official records.
Defendant's narrow argument on appeal is that the officer lacked a reasonable particularized suspicion to stop the driver of the station wagon, because the officer was not in a position to identify the driver as the person described in the vehicle's registration and related records found by the computer. He urged each trial court to find the stop was made illegally because the officer "can point to nothing particular that told him that [the] man behind that wheel, when he only sees the back of his head, is David Parks." In the Law Division, defendant characterized the stop as "random" and argued that from the police officer's location in a patrol car behind the station wagon, the officer could not observe anything about the defendant other than sex.
The United States Supreme Court has held that "except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed ... stopping an automobile and detaining the driver in order to check his driver's license ... [is] unreasonable under the Fourth Amendment." Delaware v. Prouse, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660, 663 (1979). Our Supreme Court has held that the articulable reasons causing a police officer to suspect criminal activity must be based on the totality of circumstances he faces. State v. Davis, 104 N.J. 490, 504, 517 A.2d 859 (1986). An investigatory stop of a person who might be involved in criminal activity is valid "only if the officer has a `particularized suspicion' based on an objective observation that the person stopped has been or is about to engage in criminal wrongdoing." Ibid.
*411 Here, when the police officer decided that the person he saw operating the station wagon generally matched the description from the records of the Division of Motor Vehicles, he had the requisite articulable, particularized and reasonable suspicion that the driver was David Parks whose driver's license had been revoked. Thus he acted properly in stopping the vehicle.
Each trial judge recognized that the stipulation presented only a limited version of the underlying facts. That is, it was stipulated that the officer knew the vehicle owner's sex, height, weight and age and that the officer "believe[d] that there was a general match," of that information to the person observed driving the vehicle. There was no direct or cross-examination of the officer to flesh out this broad statement of fact. The trial judges accepted it as meaning that in the officer's opinion, there was a general match. As the Law Division judge said: "The only way to assess that is to have a trial, and thus determine the credibility where you'd bring out these very things." Although full examination and cross-examination of the arresting officer would certainly have produced a better record for initial fact finding and for appellate review, the lower court judges had to rely on the stipulation at face value, as do we.
The added coincidental fact that six weeks later the same officer stopped the same vehicle after a similar lookup, only to find that someone other than defendant was the driver, is of no moment.[2] That circumstance does not impact on the reasonableness of Officer Yarzab's particularized suspicion at the time he stopped defendant.
The State urges us to hold that once the officer learns from the mobile data terminal that the vehicle's owner does not have a valid driver's license, the officer is authorized to stop and detain *412 any person driving that vehicle in order to check that person's identification. The information alone, then, would provide a police officer with an "articulable and reasonable suspicion" that the driver is unlicensed as soon as the computer search reveals the owner is unlicensed. See e.g., Annotation, Inference or Presumption that Owner of Motor Vehicle was its Driver at Time of Traffic, Driving or Parking Offense, 49 A.L.R.2d 449 (1956). We reject this broad brush approach in favor of further articulation of the facts supporting a reasonable suspicion. When there is additional evidence of defendant's identity as the driver of his vehicle at a particular time, it may be inferred that the owner was the driver. See State v. Kay, 151 N.J. Super. 255, 259-61, 376 A.2d 978 (Law Div. 1977); see also In re Emberton, 109 N.J. Super. 211, 214, 262 A.2d 899 (App.Div. 1970) (facts and circumstances known to police officer constitute probable cause to believe offense committed). We hold that when the officer's observation of the driver indicates that the driver could reasonably be the person described in the DMV records, then the dictates of Delaware v. Prouse, supra, and State v. Davis, supra are satisfied.
We conclude that Officer Yarzab reasonably believed there was a "general match" of the computerized information to his observations of the driver of the station wagon. That constituted a particularized suspicion that the driver was operating while on the revoked list, permitting the officer to make a investigatory stop of the vehicle to ascertain the driver's identity.
Affirmed.
NOTES
[1] It was stipulated he weighed 200 pounds.
[2] It was stipulated that the same officer saw the same vehicle on November 5, 1994, and stopped it after checking his computer, but this time the driver was Dennis Sellers, defendant's fifty-year-old uncle, who was six feet one inch tall and weighed approximately three hundred pounds.