697 A.2d 187

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
TYRONE GADSDEN, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted November 14, 1996—Decided August 4, 1997.

Before Judges KING and LOFTUS.

*Susan L. Reisner,* Public Defender, attorney for appellant (*Lucille M. Rosano,* Designated Counsel, of counsel and on the brief).

*Edward M. Neafsey,* Assistant Attorney General, Acting Prosecutor of Union County, attorney for respondent (*Allan C. Young,* Special Deputy Attorney General/Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

LOFTUS, J.A.D.

This case involves the issue of whether evidence which was obtained by Hillside police officers during a search incident to an arrest with a warrant in contiguous Newark should have been suppressed because the officers were outside their jurisdictional limits as set forth in *N.J.S.A.* 40A:14–152. We conclude that the search was not constitutionally infirm and the convictions must stand.

## I. Procedural History

On June 22, 1993, the Grand Jury of Union County returned Indictment No. 93–06–00842–I. It charged defendant, Tyrone Gadsden (Gadsden), with the following offenses on February 20, 1993:(1) armed robbery of Regina Nelson, contrary to *N.J.S.A.* 2C:15–1 (count one); (2) armed robbery of Placidi Ceus, contrary

to *N.J.S.A.* 2C:15–1 (count two); (3) armed robbery of Mirlande Ceus, contrary to *N.J.S.A.* 2C:15–1 (count three); (4) unlawful possession of a handgun without a permit, contrary to *N.J.S.A.* 2C:39–5b (count four); and (5) possession of a firearm for unlawful purposes, contrary to *N.J.S.A.* 2C:39–4a (count five).

On July 13, 1993, the Union County Grand Jury returned Indictment No. 93–07–00941–I which charged defendant, Tyrone Gadsden, with the following offenses on March 20, 1993:(1) armed robbery of Jackes Jacques and/or Jorge Ferreira, contrary to *N.J.S.A.* 2C:15–1 (count one); (2) possession of a handgun for unlawful purposes, contrary to *N.J.S.A.* 2C:39–4a (count two); (3) possession of a handgun without a permit, contrary to *N.J.S.A.* 2C:39–5b (count three); and (4) possession of an imitation firearm for unlawful purposes, contrary to *N.J.S.A.* 2C:39–4e (count four).

On July 13, 1993, the Union County Grand Jury returned Indictment No. 93–07–00942–I which charged defendant, Tyrone Gadsden with the following offenses on April 11, 1993:(1) armed robbery of Michelle Evaristo and/or Angella Edie, contrary to *N.J.S.A.* 2C:15–1 (count one); (2) possession of a handgun for unlawful purposes, contrary to *N.J.S.A.* 2C:39–4a (count two); (3) unlawful possession of a handgun without a permit, contrary to *N.J.S.A.* 2C:39–5b (count three); and (4) possession of an imitation firearm for unlawful purposes, contrary to *N.J.S.A.* 2C:39–4e (count four).

On September 14, 1993, the Union County Grand Jury returned Indictment No. 93–09–01210–I against defendant, Tyrone Gadsden, charging him with the following offenses on May 1, 1993:(1) armed robbery of Robert Craft, contrary to *N.J.S.A.* 2C:15–1 (count one); (2) armed robbery of Yves Exume, contrary to *N.J.S.A.* 2C:15–1 (count two); (3) armed robbery of Salvatore DeFranco, contrary to *N.J.S.A.* 2C:15–1 (count three); (4) unlawful possession of a handgun without a permit, contrary to *N.J.S.A.* 2C:39–5b (count four); and (5) possession of a handgun for unlawful purposes, contrary to *N.J.S.A.* 2C:39–4a (count five). Gadsden

pleaded not guilty to the charges and various pre-trial motions were heard.

At the motion to suppress, Gadsden contended that all evidence which had been seized during his arrest should be suppressed because he was arrested by the Hillside police outside of their jurisdiction in violation of *N.J.S.A.* 40A:14–152. The evidence included his and co-defendant Vernon Harris' statements to police, reports relating to the seizure of his vehicle, surveillance and investigation results of Gadsden and Harris, as well as fingerprint and photographic identifications of Gadsden and Harris.

The judge denied Gadsden's request for a *Wade* hearing because he did not meet the preliminary criteria of impermissible suggestiveness under *State v. Ortiz,* 203 *N.J.Super.* 518, 522, 497 *A.*2d 552 (App.Div.), *certif. denied,* 102 *N.J.* 335, 508 *A.*2d 212 (1985). After a *Miranda* hearing, the judge ruled that Gadsden's statement of May 5, 1993, to Union Township police was admissible. The judge also denied the motion to suppress.

Gadsden then retracted his pleas of not guilty and entered pleas of guilty to the following crimes: (1) counts one, two and three of Union County Indictment Number 93–06–00842–I, charging armed robbery of Regina Nelson, Placide Ceus, and Mirlande Ceus; (2) count one of Union County Indictment Number 93–07–00941–I, charging armed robbery of Jackes Jacques and/or Jorge Ferreira; (3) count one of Union County Indictment Number 93–07–00942I, charging armed robbery of Michelle Evaristo and/or Angella Edie; and (4) counts one, two and three of Union County Indictment Number 93–09–1210–I, charging armed robbery of Robert Craft, Yves Exume and Salvatore DeFranco. Defendant entered a conditional plea pursuant to *R.* 3:9–3(f), preserving his right to appeal from the adverse decision on the *Miranda* hearing and the motion to suppress.

In exchange for his pleas of guilty, the State agreed to dismiss all other counts of the four indictments, and to recommend an aggregate sentence of twenty-five years with a twelve-year parole disqualification which was to run concurrently with any parole

violation.  Gadsden also agreed to testify truthfully against Vernon Harris at trial.

Gadsden was sentenced to an aggregate term of twenty-five years with a twelve-year parole ineligibility term on Indictments Number 93–07–00941–I, 93–07–00942–I, 93–06–00842–I and 93–09–01210–I.  All sentences were to run concurrently with each other.  A $50 V.C.C.B. penalty was imposed on each of the eight robbery counts for a total of $400.  As a condition of the sentence, Gadsden agreed to testify truthfully against co-defendant Vernon Harris.  Defendant was given 404 days jail credit.  All remaining counts of the indictments were dismissed.  Gadsden appeals.

On appeal, he contends:

POINT I

THE TRIAL COURT ERRED IN FINDING THAT DEFENDANT HAD NOT BEEN ILLEGALLY ARRESTED; CONSEQUENTLY, ALL EVIDENCE OBTAINED AS A RESULT OF THE ARREST SHOULD HAVE BEEN SUPPRESSED.  *U.S. CONST.*, AMEND.IV; *N.J. CONST.*, (1947) ART. 1, PARA. 7.

POINT II

THE TRIAL COURT ERRED IN ADMITTING DEFENDANT'S IN–CUSTODY STATEMENT TO UNION POLICE IN VIOLATION OF THE REQUIREMENTS OF *MIRANDA V. ARIZONA*, THE UNITED STATES CONSTITUTION AND NEW JERSEY COMMON LAW.  *U.S. CONST.*, AMEND. V. AND XIV.

POINT III

DEFENDANT'S SENTENCE IS EXCESSIVE AND SHOULD BE REDUCED ON APPEAL.

For the reasons set forth in the following opinion, we conclude that these contentions are non-meritorious.  We affirm.

## II.   Statement of Facts

Both the State and the defense agree that the following statement of facts is an accurate representation of the testimony elicited at the motion to suppress.  They also agree that the following findings of fact and conclusions of law are accurate with regard to the motion to suppress.  The State only disputes Gadsden's contention that his arrest was illegal.

## A. Motion to Suppress

On January 3, 1993, Gadsden's motion to suppress all evidence obtained due to his illegal arrest was heard by Judge Spatola. The evidence indicated that on May 3, 1993, the Hillside police were investigating a series of alleged armed robberies. Three armed robberies had occurred at fast food restaurants in Hillside, New Jersey. A fourth armed robbery was alleged to have occurred in Union, New Jersey. The Hillside police had received a tip that Gadsden was involved in a series of armed robberies in the area, and were informed by Union police that a black Cadillac had been used in the Union armed robbery.

With this information, Hillside police officers travelled to Gadsden's residence in contiguous Newark. At some point during the day, they ran a motor-vehicle check on the license number of a black Cadillac which was outside his residence and determined that the vehicle belonged to defendant. Upon returning to the Hillside Police Department, Hillside officers telephoned the Union Police Department and gave them defendant's name, along with two other names, as possible suspects in the Union armed robbery.

Later that same day, a photograph of Gadsden was shown to three of the alleged victims/witnesses of the Hillside armed robberies. Gadsden's photograph was positively identified by one of the individuals. On May 3, 1993, an arrest warrant for Gadsden was obtained from the Hillside Municipal Court.

Hillside officers went to Gadsden's residence in Newark and arrested him. He was taken to the Hillside Police Station where he was later charged with the offenses in the four indictments. Defendant's car was seized and impounded at the Hillside Police Department.

On May 4, 1993, Gadsden gave oral and written statements to the Hillside police implicating himself and Vernon Harris in the February 20, March 20, and April 11, 1993 armed robberies in Hillside. The following day, May 5, 1993, he gave oral and written

statements to the Union Police implicating himself and Harris in the May 1, 1993 armed robbery in Union.

Separate photographic arrays containing Gadsden's and Harris' photographs were shown to victims/witnesses in the other Hillside armed robberies. Comparisons of Gadsden's and Harris' finger-prints with fingerprints found at the scene of the Union armed robbery were positive.

The defense argued that the Hillside police were clearly in violation of *N.J.S.A.* 40A:14–152, which limits police jurisdiction to the boundaries of their own municipality. The defense contended that the Hillside police should have enlisted the assistance of the Newark Police Department, the Essex County Sheriff and the Essex County Prosecutor's Office in order to effectuate the arrests of Gadsden and Harris in Newark. The defense contended that because the Hillside police officers had no jurisdiction to arrest Gadsden and Harris in Newark, these arrests were illegal and that the United States Constitution and the New Jersey Constitution require suppression of all evidence obtained as a result of these illegal arrests. The defense further argued that the warrant was illegally obtained because it was based upon extra-jurisdictional observations of Gadsden's home by Hillside police, and that probable cause did not exist to issue the warrant.

The State conceded that the arrest by Hillside police in Newark was outside their jurisdictional authority. However, it argued that the officers could arrest Gadsden in Newark pursuant to their authority as private citizens, and, in any event, that the exclusionary rule was not the appropriate remedy because there was not a violation of the defendant's constitutional rights—only a violation of a statute.

The judge denied defendant's motion to suppress the evidence. She found that the Hillside officers were outside their territorial boundaries when they arrested defendant in Newark, in violation of *N.J.S.A.* 40A:14–152, and that the private citizen doctrine evoked by the State as justification for the extra-judicial arrest, did not apply. However, the judge determined that the violation

of the statute was not of constitutional dimension. She ruled that the statute was a general empowering law, which was not part of the Criminal Code and that its violation was a procedural infraction, not a constitutional infringement.

The judge further ruled that the Hillside officers had an arrest warrant, which had been issued by the Hillside Municipal Court after a finding of probable cause, and that neither the validity of the warrant nor the existence of probable cause for its issuance was being challenged. The judge also determined that the surveillance of Gadsden's Newark home by the Hillside officers was not illegal or unconstitutional.

Finally, the judge found that even if the Hillside police officers' failure to comply with *N.J.S.A.* 40A:14–152 was a violation of Gadsden's constitutional rights, the evidence obtained against defendant and Harris would be admissible under the inevitable discovery exception to the exclusionary rule.

## III.   Legal Analysis

The key issue presented on this appeal is whether all the evidence obtained as a result of Gadsden's arrest in Newark on May 3, 1993, by Hillside police should be suppressed under the Fourth Amendment to the United States Constitution and Article 1, Paragraph 7 of our New Jersey Constitution.

*N.J.S.A.* 40A:14–152 provides:

> The members and officers of a police department and force, within the territorial limits of the municipality, shall have all the powers of peace officers and upon view may apprehend and arrest any disorderly person or any person committing a breach of the peace. Said member and officers shall have the power to serve and execute process issuing out of the courts having local criminal jurisdiction in the municipality and shall have the powers of a constable in all matters other than civil causes arising in such courts.

The State and defense both agree that the Hillside police violated *N.J.S.A.* 40A:14–152 on May 3, 1993, when they arrested Gadsden in Newark.

## A.   Defense Position

Gadsden contends that under the circumstances, the fruits of the surveillance of defendant and the co-defendant by the Hillside Police Department, all vehicle checks, defendant's, Harris' and Fudge's arrests, all oral and written statements of defendant and Harris, all fingerprint identifications of defendant and Harris, and all property impounded as a result of these arrests, including defendant's vehicle, obtained as a result of the illegal surveillance and arrest must be suppressed as fruits of the poisonous tree pursuant to *Mapp v. Ohio,* 367 *U.S.* 643, 655, 81 *S.Ct.* 1684, 1691, 6 *L.Ed.*2d 1081, 1090 (1961).   The defense contends that the actions of the Hillside officers constitute a clear and compelling violation of defendant's State and federal constitutional rights against unreasonable searches and seizures, and that this court should reverse the trial court's decision, grant defendant's motion to suppress, and reverse defendant's conviction.

Gadsden contends that the Hillside police violated the recognized law that the power of an officer to make an arrest is limited to the geographical boundaries of the municipality in which they are officers.

Gadsden contends that although the extra-territorial surveillance and arrest in Newark does not bar his trial, the evidence obtained as a result of those actions should be ruled inadmissible. Accordingly, all evidence obtained against defendant as a result of defendant's and Harris' illegal surveillance and arrest must be suppressed as fruit of the poisonous tree.

## B.   State Position

The State takes the following position.   Although a police officer generally may make an arrest only within the municipality in which he is employed as an officer, pursuant to *N.J.S.A.* 40A:14-152, there are exceptions to the rule.   An officer can make "a citizen's arrest" outside of his or her municipality.   The State contends that under common law any citizen could make an arrest without a warrant where a felony was provable and there were

reasonable grounds to believe that the arrested person had committed the felony. Thus, even if the officers believed that they were arresting defendant pursuant to their official powers, the arrest was valid because it was a citizen's arrest and they had an objectively reasonable basis to arrest defendant.

The State further submits that defendant's constitutional rights were not violated by his arrest in Newark by Hillside officers, and that the exclusionary rule does not apply. It contends that any evidence seized by the police was not fruit of the poisonous tree, as defendant argues. The State suggests that the fruit of the poisonous tree doctrine set forth in *Wong Sun v. United States*, 371 *U.S.* 471, 83 *S.Ct.* 407, 9 *L.Ed.*2d 441 (1963), applies only to evidence seized in violation of a suspect's constitutional rights. In the present case, defendant's constitutional rights were not violated, for he has no constitutional right to be arrested in Newark by Newark police officers rather than by Hillside police officers. *N.J.S.A.* 40A:14–152 is not a law of constitutional dimension. The State notes that in her opinion, Judge Spatola stated: "The statute is not a part of the criminal code but rather is a general empowering law. Hence, the fact that said statute was not complied with by the Hillside authorities is in the nature of a procedural violation rather than a constitutional infringement of any protected right of [defendant]." The State submits that based upon the case law of several jurisdictions, the judge's opinion was correct.

The State contends that the statute does not proscribe this type of conduct, and a court should not look beyond the plain language of the statute in interpreting its meaning. In fact, as stated by the trial court, the observations made by the officers could have been made by any citizen and were not illegal. Moreover, an officer does not violate an individual's rights by running a motor vehicle check on a license plate number observed in public view, as did the officers in the present case. *See State v. Lewis*, 288 *N.J.Super.* 160, 163–64, 671 *A.*2d 1126 (App.Div.1996); *see also*

*State v. Parks,* 288 *N.J.Super.* 407, 410, 672 *A.*2d 742 (App.Div. 1996).

Finally, the State submits that the judge was correct in holding that even if the Hillside officers' failure to comply with *N.J.S.A.* 40A:14–152 had violated defendant's constitutional rights, "the evidence derived therefrom ... would be admissible under the inevitable discovery exception to the exclusionary rule in that defendant could have eventually been arrested by the Newark police."

## C. Relevant Law

Gadsden's first contention is that his arrest by Hillside police officers in Newark violated his State and federal constitutional rights against unreasonable searches and seizures, and that the evidence obtained as a result of the arrest should be suppressed pursuant to the exclusionary rule.

The prohibition against robbery and other violent acts reflects society's concern for protection against criminal behavior. Generally, the public relies on the police to prevent such criminal acts. Consequently, the public entrusts the police with powers not possessed by the public at large, such as the power to search and seize. When exercising those powers, however, police officers are restrained by the basic constitutional rights of every citizen. Those rights include freedom from search and seizure without probable cause. *U.S. Const.* amend. IV; *N.J. Const.* art. I, § 7.

To determine whether the evidence obtained as a result of Gadsden's arrest should be suppressed pursuant to the exclusionary rule requires a consideration of the constitutional validity of Gadsden's seizure. The first issue we confront concerns the sufficiency of the affidavit that prompted the issuance of the warrant for Gadsden's arrest. The standard by which we measure the affidavit is probable cause, the standard imposed by both the Fourth Amendment and article I, paragraph 7 of the New Jersey

Constitution. The Fourth Amendment to the United States Constitution provides [1]:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The United States and New Jersey Supreme Courts have specified that "probable cause exists if the facts and circumstances known to the officer warrant a prudent [person] in believing that the offense has been committed." *State v. Novembrino*, 105 *N.J.* 95, 106, 519 *A.*2d 820 (1987) (quoting *Henry v. United States*, 361 *U.S.* 98, 80 *S.Ct.* 168, 4 *L.Ed.*2d 134 (1959)). This standard seeks to "safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime." *Ibid.* The crucial determination is to be made not be the police, but by a neutral issuing judge. *Id.* at 107, 519 *A.*2d 820.

The principal remedy for violations of constitutional rights governing the State's seizure of citizens is the exclusion of evidence obtained as a result of the State's action. *State v. Burris*, 145 *N.J.* 509, 520, 679 *A.*2d 121 (1996). New Jersey recognized the exclusionary rule "as essential to the safeguarding of a citizen's constitutional and fundamental rights regulating the government's acquisition of incriminating evidence." *Ibid.* This court has opined that the "essential, if not sole, purpose served by the exclusionary rule in the context of a Fourth Amendment controversy is prophylactic—to deter and discourage police conduct which is constitutionally offensive." *State v. Morant*, 241 *N.J.Super.* 121, 135, 574 *A.*2d 502 (App.Div.), *certif. denied*, 127 *N.J.* 323, 604 *A.*2d 598 (1990). Moreover, we have stated that the central purpose of the exclusionary rule is not to rectify a wrong already done, but to compel respect for the constitutional protections afforded the public in the most effective manner, by remov-

---

[1] Article I, paragraph 7 of the New Jersey Constitution is almost identical in language.

ing the incentive to disregard it. *State v. Engel*, 249 *N.J.Super.* 336, 368, 592 *A.*2d 572 (App.Div.), *certif. denied*, 130 *N.J.* 393, 614 *A.*2d 616 (1991). As Justice Pollock noted, "As a result, a violation of those rights is not a mere technicality, but a breach of the basic compact between the people and the state." *State v. Johnson*, 118 *N.J.* 639, 651, 573 *A.*2d 909 (1990). Thus, New Jersey courts have held that the exclusionary rule is to be applied only in cases in which evidence has been seized in violation of a suspect's constitutional rights. *State v. Hartley*, 103 *N.J.* 252, 282–83, 511 *A.*2d 80 (1986) (citing *Oregon v. Elstad*, 470 *U.S.* 298, 308, 105 *S.Ct.* 1285, 1292, 84 *L.Ed.*2d 222, 231 (1985)). Thus, for Gadsden to prevail on his motion to suppress, he must establish that the arrest by Hillside police officers in Newark represented a violation of his constitutional rights.

After reviewing the record as well as the applicable case and statutory law, we conclude that although Gadsden's arrest by Hillside police officers violated *N.J.S.A.* 40A:14–152, this violation was of a procedural or technical nature, and did not rise to the level of a violation of any of Gadsden's constitutional rights.

In reaching this conclusion we have reviewed the jurisprudence of our State as well as other jurisdictions. The Pennsylvania Courts have considered this issue on numerous occasions. In *Commonwealth v. Saul*, 346 *Pa.Super.* 155, 499 *A.*2d 358 (1985), a police officer traveled outside his municipality and made an unauthorized, undercover purchase of illegal narcotics from the defendant. The defendant moved to suppress the evidence obtained as a result of the purchase and ensuing arrest on the basis that the officer had violated the Pennsylvania Municipal Police Jurisdiction Act, 42 *Pa.C.S.A.* § 8953(a).[2] The *Saul* court cited the Ninth Circuit Court for the proposition that "[o]nly a fundamental

---

[2] The general purpose of 42 *Pa.C.S.A.* § 8953 is to restrict the jurisdiction of police to their own municipalities, while allowing certain practical and policy exceptions to the general rule. *Commonwealth v. Fetsick*, 392 *Pa.Super.* 264, 572 *A.*2d 793, 794 (1990).

violation of a rule of criminal procedure requires automatic suppression, and a violation is fundamental only where it, in effect, renders the search unconstitutional under traditional fourth amendment standards." *Commonwealth v. Saul, supra,* 499 *A.*2d at 361 (citing *U.S. v. Vasser,* 648 *F.*2d 507, 510 (9th Cir.1980)). The *Saul* court further opined, "It is only where the violation also implicates fundamental constitutional concerns, is conducted in bad faith or has substantially prejudiced the defendant that exclusion may be an appropriate remedy." *Ibid.* (citing *Commonwealth v. Mason,* 507 *Pa.* 396, 490 *A.*2d 421, 426 (1985)).

The *Saul* court concluded that the violation of the Municipal Jurisdiction Act did not equate with a constitutional violation, and noted:

> Under the circumstances of the instant case, suppression of the evidence gained by [the officer's] illegal investigation "would be a remedy all out of proportion to the benefits gained to the end of obtaining justice while preserving individual liberties unimpaired."
>
> [*Id.* 499 *A.*2d at 362 (citing *United States v. Searp,* 586 *F.*2d 1117, 1123 (6th Cir.1978), *cert. denied,* 440 *U.S.* 921, 99 *S.Ct.* 1247, 59 *L.Ed.*2d 474 (1979)).]

The trend of many states is to follow Pennsylvania and hold that where a police officer violates a criminal-procedure statute, such as exceeding territorial jurisdiction, evidence gathered as a result is not automatically subject to suppression. *See United States v. Shelton,* 742 *F.Supp.* 1491, 1502–04 (D.Wyo.1990); *United States v. Vasser,* 648 *F.*2d 507, 510 (9th Cir.1980), *cert. denied,* 450 *U.S.* 928, 101 *S.Ct.* 1385, 67 *L.Ed.*2d 360 (1981); *United States v. Searp,* 586 *F.*2d 1117, 1122–24 (6th Cir.1978), *cert. denied,* 440 *U.S.* 921, 99 *S.Ct.* 1247, 59 *L.Ed.*2d 474 (1979); *State v. Fixel,* 744 *P.*2d 1366, 1368–69 (Utah 1987); *People v. Vigil,* 729 *P.*2d 360, 365–66 (Colo. 1986); *State v. Schinzing,* 342 *N.W.*2d 105, 108–09 (Minn.1983); *State v. Bonds,* 98 *Wash.*2d 1, 653 *P.*2d 1024, 1030–31 (1982), *cert. denied,* 464 *U.S.* 831, 104 *S.Ct.* 111, 78 *L.Ed.*2d 112 (1983); *State v. Rocheleau,* 142 *Vt.* 61, 451 *A.*2d 1144, 1147–48 (1982); *City of Kettering v. Hollen,* 64 *Ohio St.*2d 232, 416 *N.E.*2d 598, 600–01 (1980) (exclusionary rule will not ordinarily be applied to evidence which is the product of police conduct violative of state law but not

violative of constitutional rights); *State v. Eubanks*, 283 *N.C.* 556, 196 *S.E.*2d 706, 708–10 (1973); *People v. Dyla*, 142 *A.D.*2d 423, 536 *N.Y.S.2d* 799, 809 (1988), *appeal denied*, 74 *N.Y.*2d 808, 546 *N.Y.S.2d* 566, 545 *N.E.*2d 880 (1989).

We agree with the trend in these states. We conclude that technical violation of a procedural law does not automatically render a search and seizure unreasonable and does not require the exclusion of evidence. However, violations of procedural rules which assume constitutional dimensions may require the exclusion of evidence which has been seized as a result.

In this case, the Hillside police officers who arrested Gadsden had probable cause to believe that he had committed a crime in Hillside. The Hillside police received a tip from an informant that Gadsden was a participant in the series of armed robberies. Witnesses from at least one of the armed robberies reported that the perpetrators fled in a black Cadillac. The Hillside police determined that a black Cadillac parked in the vicinity of Gadsden's home in Newark was registered in his name. Finally, a witness to one of the Hillside robberies identified Gadsden from a photographic line-up as one of the armed robbers. The Hillside police utilized this information and obtained an arrest warrant from a neutral judge in the Hillside Municipal Court. Thus, the arrest was legally effective because it was reasonable and based upon probable cause. Because there was probable cause to arrest Gadsden, the Hillside police did not infringe upon Gadsden's State and federal constitutional rights against unreasonable search and seizure.

In effectuating the arrest, the Hillside police officers technically failed to comply with *N.J.S.A.* 40A:14–152 when they traveled to Newark without obtaining the assistance of the Newark Police Department, the Essex County Sheriff or Essex County Prosecutor's Office. However, we conclude that the violation of *N.J.S.A.* 40A:14–152 by the Hillside police officers when they executed an arrest warrant outside their jurisdiction in contiguous Newark was a technical, procedural, statutory violation—not a constitutional

violation. Therefore, the exclusionary rule does not require that the evidence obtained as a result of Gadsden's arrest be suppressed.

### D. Conclusion

The applicable standard governing appellate review in a case of this nature is that the fact-finding of a trial judge may not be disturbed if supported by sufficient, credible evidence in the record. *State v. Barone*, 147 *N.J.* 599, 615, 689 *A.*2d 132 (1997) (citing *State v. Johnson*, 42 *N.J.* 146, 161–62, 199 *A.*2d 809 (1964)). This court is obliged to accord special deference to findings "which were substantially influenced by the judge's opportunity to hear and see the witnesses and to have the 'feel' of the case, which an appellate court does not enjoy." *State v. Johnson, supra,* 42 *N.J.* at 161, 199 *A.*2d 809. The task of an appellate court is not to reweigh the evidence but to determine if sufficient evidence exists. *State v. Barone, supra,* 147 *N.J.* at 615, 689 *A.*2d 132 (citing *State v. Johnson, supra,* at 162, 199 *A.*2d 809).

With regard to the motion to suppress, we also conclude that the findings of fact and conclusions of law were based upon sufficient, credible evidence in the record in light of existing statutory and case law. Because of the foregoing conclusions we need not address issues concerning a citizen's arrest and the inevitable discovery exception to the exclusionary rule.

While the foregoing legal conclusions do not warrant the suppression of the evidence obtained in this case, we note that any repetitive, recurrent violations of *N.J.S.A.* 40A:14–152, with regard to extraterritorial actions of police officers, should be treated with appropriate sanctions. *See State v. Bonds*, 98 *Wash.*2d 1, 653 *P.*2d 1024, 1032 (1982); *State v. Wolf,* 635 *P.*2d 213, 217 (Colo.1981).

### E. Point II

With regard to the *Miranda* hearing, we conclude that the findings of fact and conclusions of law were supported by substantial, credible evidence in the record. Thus, we need not address Point II. *R.* 2:11–3(e)(2).

### F.   Point III

Lastly, we address Point III. We are satisfied that there is no basis for disturbing the sentences imposed.   The judge imposed the sentences consonant with the Criminal Code as explicated by case law.   *See State v. Ghertler,* 114 *N.J.* 383, 387–88, 555 *A.2d* 553 (1989).   Application of the law to the facts discloses no abuse of discretion, and the sentences do not shock our judicial conscience. *See State v. Roth,* 95 *N.J.* 334, 363–66, 471 *A.2d* 370 (1984).

Affirmed.