**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3339-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RICKY A. GALLOWAY,
a/k/a FARRAD FARRAKHAN,
RICKY GALLOWAY JR., and
RICKY A. GALLOWAY, JR.,

     Defendant-Appellant.

_____

Argued October 15, 2024 – Decided February 20, 2025

Before Judges Sabatino, Gummer and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 22-09-1636.

Ethan Kisch, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer Nicole Sellitti, Public Defender, attorney; Ethan Kisch, of counsel and on the brief).

Ashlea D. Newman, Deputy Attorney General, argued the cause for the respondent (Matthew J. Platkin,

Attorney General, attorney; Ashlea D. Newman, of counsel and on the brief).

PER CURIAM

Defendant Ricky Galloway appeals his convictions for weapon and drug offenses. He contends that the Toms River Police Department (TRPD) executed a search warrant beyond its jurisdictional bounds, thus requiring suppression of contraband seized in the search. We agree and reverse.

I.

On August 5, 2020, TRPD Patrolman Louis Taranto III filed an affidavit in support of a search warrant, attesting that he had probable cause to believe defendant was using a vehicle to transport drugs and firearms for sale. Taranto detailed how two weeks earlier, he and other TRPD officers had coordinated and witnessed a narcotics transaction in Toms River between defendant and a confidential informant. The vehicle used for distribution, a 2002 silver Jaguar, was owned by a third-party residing in the neighboring town of Lakewood. Under oath, Taranto stated that:

> the practice of utilizing a vehicle to distribute and store CDS [(controlled dangerous substance)] [is] a common practice utilized by individuals who are engaged in the illicit distribution of CDS. This affiant knows that individuals will store additional quantities of CDS, drug paraphernalia[,] and records, inside of hidden compartments and or voids in a vehicle, in an attempt to thwart detection by law enforcement.

Based on Taranto's affidavit, a Toms River municipal court judge found "probable cause to believe that in and upon a certain vehicle within the TOWNSHIP OF TOMS RIVER . . . a Silver 2002 Jaguar S Type" had been involved in drug transactions. The judge approved a search warrant for seizure of evidence of those transactions within the vehicle in the form of

> HEROIN AND OTHER CONTROLLED DANGEROUS SUBSTANCES, MONEY IN BILL AND COIN FORM, RECORDS AND LEDGERS, BOTH WRITTEN AND ELECTRONIC, ANY LOCKED CONTAINERS INCLUDING SAFES AND STRONG BOXES, ANY AND ALL FIREARMS, AND MISCELLANEOUS PARAPHERNALIA PERTAINING TO THE UNLAWFUL POSSESSION, DISTRIBUTION, CONSUMPTION AND MANUFACTURING OF CONTROLLED DANGEROUS SUBSTANCES

On August 7, 2020, TRPD officers established surveillance of defendant at his Lakewood home. As defendant drove the Jaguar, the officers followed, planning to conduct a motor-vehicle stop in Toms River, then search the vehicle pursuant to the issued warrant. During surveillance, within a span of approximately ninety minutes, officers witnessed defendant conduct what they believed to be three separate narcotics transactions at various locations in Lakewood.

Afterward, they positioned themselves to intercept defendant at an intersection where he could choose to turn in one direction further into

Lakewood or in another direction into Toms River. Based on their perception that defendant was on the periphery of the Toms River border and wishing to avoid the possibility of defendant travelling deeper into Lakewood, TRPD determined to make the stop on the Lakewood side of the border.

After stopping defendant's vehicle, officers placed him under arrest and executed the search warrant of the vehicle, uncovering a .40-caliber handgun, 234 wax folds of heroin, and a small quantity of cocaine. Incident to arrest, the police recovered from defendant's person two .40-caliber rounds of ammunition and $1,608 in cash. With this evidence, Taranto sought defendant's consent to search his residence in Lakewood. Defendant signed a consent-to-search form, was placed in a patrol vehicle and taken to his home. Once there, defendant directed Taranto and other officers upstairs to his bedroom, pointing out a black bag. Inside the bag, police found 650 wax folds of heroin and a .40-caliber handgun magazine suitable for the handgun seized at the stop. Near the black bag, officers recovered $6,000 in cash.

In September 2022, an Ocean County grand jury returned superseding indictment No. 22-09-1636, charging defendant with: third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1) (count one); third-degree possession with intent to distribute CDS, N.J.S.A. 2C:35-5(a)(1), (b)(5) (count two); third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1) (count three); second-

degree possession with intent to distribute CDS, N.J.S.A. 2C:35-5(a)(1), (b)(2) (count four); third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1) (count five); third-degree possession with intent to distribute CDS, N.J.S.A. 2C:35-5(a)(1), (b)(5) (count six); third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1) (count seven); third-degree possession with intent to distribute CDS, N.J.S.A. 2C:35-5(a)(1), (b)(3) (count eight); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1) (count nine); fourth-degree possession of large-capacity ammunition magazine, N.J.S.A. 2C:39-3(j) (count ten); fourth-degree possession of large-capacity ammunition magazine, N.J.S.A. 2C:39-3(j) (count eleven); second-degree possession of a firearm while engaged in certain drug activity, N.J.S.A. 2C:39-4.1(a) (count twelve); and, second-degree certain persons not to possess firearm, N.J.S.A. 2C:39-7(b)(1) (count thirteen).

Defendant moved to suppress the drugs, gun, and ammunition seized from his car and home. The State opposed the motion and argued in the alternative that "based on the observations that those officers made on August 7th of 2020, whether they were in Lakewood or Toms River, their police powers extend[ed] across those borders. So they had a reasonable articulable basis to stop the vehicle and to search it wherever it was located."

In June 2022, Taranto was the sole witness to testify at a hearing where the search warrant, consent-to-search form, and video recording of the signing

5

of the consent-to-search form were admitted in evidence. Taranto acknowledged that police officers had stopped and searched defendant's car in Lakewood, not Toms River. When asked "how far [defendant] would . . . have had to travel before he actually was in Toms River," Taranto responded, "Not far." The precise distance from the location of the vehicle stop to the Toms River border was not elicited by counsel for the State or defense. It is not disputed, however, that the stop, arrest, and search of defendant's car occurred in Lakewood.

In its decision, the court found probable cause for issuance of the search warrant based on the controlled narcotics buy utilizing the confidential informant. In upholding the validity of the search, the court acknowledged that defense counsel had "cited State v. Broom-Smith to support his argument in which the Court opined that officers seeking the warrant are generally required to contact the judge of the . . . territorially appropriate court barring some absence or incapacitation of that territorially appropriate judge." 201 N.J. 229, 235 (2010). The court noted that "Toms River and Lakewood are both located in the County of Ocean," finding that "a vehicle is inherently mobile and, thus, the territorial limitations the search of a residence presents are not present here." The court determined that "the officers acted within the scope of the search warrant and, thus, the motor vehicle stop, arrest[,] and search of [d]efendant and

6

the vehicle were constitutional."  In stating its ultimate legal conclusion, the court pronounced, "[f]inally, had [d]efendant taken a left off Route 70 instead of a right, he would have entered Toms River and not Lakewood.  This court will not suppress evidence based on the fractional geographical differences between townships in the same county."  Having denied the motion to suppress on those grounds, the court did not rule on the State's alternative argument.

Following the court's ruling, defendant pled guilty to count six (possession with intent to distribute CDS) and count thirteen (certain persons not to possess weapons).  In June 2023, defendant was sentenced to the State's recommended term of seven years imprisonment on count six, concurrent with a five-year term with five years of parole ineligibility on count thirteen, together with mandatory fines and penalties.

II.

On appeal, defendant raises the following arguments:

POINT I

THE TOMS RIVER POLICE OFFICERS VIOLATED THE SCOPE OF THE SEARCH WARRANT BECAUSE ITS TEXT SPECIFICALLY LIMITED ITS EXECUTION TO THE CAR WHILE IT WAS IN TOMS RIVER — NOT LAKEWOOD.  U.S. CONST. AMEND. IV; N.J. CONST. ART. I, ¶ 7.

POINT II

THE SEARCHES OF MR. GALLOWAY'S CAR AND HOME WERE INVALID BECAUSE BOTH TOOK PLACE OUTSIDE THE JURISDICTION OF THE TOMS RIVER MUNICIPAL COURT AND THE TOMS RIVER POLICE OFFICERS. U.S. CONST. AMEND. IV; N.J. CONST. ART. I, ¶ 7.

POINT III

MR. GALLOWAY DID NOT VOLUNTARILY CONSENT TO THE SEARCH OF HIS HOME BECAUSE POLICE GAINED HIS SUBMISSION ONLY AFTER OFFICERS (1) THREATENED TO "TEAR THROUGH THE HOUSE" IF HE DID NOT SIGN THE CONSENT-TO-SEARCH FORM; (2) ASSERTED THAT A SEARCH OF HIS HOME WAS INEVITABLE IRRESPECTIVE OF HIS CONSENT; AND (3) INDICATED THAT THE POLICE—NOT THE COURT—WOULD DECIDE THAT A WARRANT WOULD ISSUE. U.S. CONST. AMEND. IV; N.J. CONST. ART. I, ¶ 7.

POINT IV

POLICE AT THE ROADSIDE CAR STOP LACKED AN OBJECTIVELY REASONABLE AND ARTICULABLE BASIS TO SEEK MR. GALLOWAY'S CONSENT TO SEARCH HIS HOME. N.J. CONST. ART. I, ¶ 7. (Not Raised Below)

Our scope of review on a motion to suppress is limited. State v. Ahmad, 246 N.J. 592, 609 (2021). We "uphold the factual findings underlying the court's [suppression] decision so long as those findings are supported by sufficient credible evidence in the record." Ibid. (quoting State v. Elders, 192 N.J. 224,

243 (2007)). We review de novo a court's legal conclusions "and the consequences that flow from established facts." State v. Hubbard, 222 N.J. 249, 263 (2015); see also State v. Nyema, 249 N.J. 509, 527 (2022).

Generally, we note that "a search executed pursuant to a warrant is presumed to be valid and . . . a defendant challenging its validity has the burden to prove 'that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable.'" State v. Jones, 179 N.J. 377, 388 (2004) (quoting State v. Valencia, 93 N.J. 126, 133 (1983)). Because our decision rests on resolution of errant legal conclusions reached by the court as addressed in defendant's first two of four points, we do not visit the extensive factual and legal issues raised regarding defendant's purported consent to search his home. Instead, our focus is on the seizure and search of defendant's vehicle.

Defendant has not challenged the validity of the warrant per se. Rather, his challenge rests on the plain fact that the scope of the search warrant sought and ultimately authorized by a Toms River municipal court judge was limited to the confines of Toms River, rendering unlawful the search conducted in Lakewood. Defendant urges us to interpret Broom-Smith in his favor, as it holds officers must first "attempt to contact the judge of the territorially-appropriate court" because "that judge's disqualification or inability to hear the case [] will

trigger the cross-assignment order[,]" which permits "more than one judge to carry on in case of the disqualification or inability of the regularly-assigned judge[.]" 201 N.J. at 235-36. Defendant argues, "in this case, Officer Taranto testified that he did not even consider seeking a warrant from the Lakewood municipal court" or a cross-assigned judge.

The State urges we treat the police action concerned more indulgently, affirming based on the court's observation that unlike a residence, a car is inherently mobile. Broom-Smith, the State emphasizes, concerned a warrant authorized to search a structure, not a vehicle. Id. at 233. The State observes that the warrant itself is valid and contends it should not be invalidated merely because it was executed within a short distance beyond its municipal boundary. The State points to language in State v. Gadsden, that "where a police officer violates a criminal procedure statute, such as exceeding territorial jurisdiction, evidence gathered as a result is not automatically subject to suppression." 303 N.J. Super. 491, 504 (App. Div. 1997).

While acknowledging that Taranto's announced "priority was to operate within the four corners of the search warrant," the State argues in the alternative that the police were otherwise authorized to make an arrest based on the three drug transactions they had witnessed on the day of the warrant's execution. The State maintains that under N.J.S.A. 40A:14-152.1, Taranto could have

investigated or arrested defendant in any New Jersey municipality, because that statute provides that "any . . . municipal police officer shall have full power of arrest for any crime committed in said officer's presence and committed anywhere within the territorial limits of the State of New Jersey."

## III.

Generally, the issuance of a warrant by a neutral judicial magistrate is governed by Rule 3:5-1, which provides that a "search warrant may be issued by a judge of a court having jurisdiction in the municipality where the property sought is located." A cross-assignment order confers jurisdiction when an assignment judge issues an order authorizing municipal court judges within the county to substitute for each other pursuant to Rule 1:12-3(a). However, the record contains no such order in effect pertaining to the Toms River municipal court judge who authorized the search warrant in this case.

Further, as highlighted by defendant on appeal, there is no statutory basis expanding the municipal court's jurisdiction beyond the municipality's boundaries. Under N.J.S.A. 2B:12-16(a):

> A municipal court of a single municipality shall have jurisdiction over cases arising within the territory of that municipality . . . . The territory of a municipality includes any premises or property located partly in and partly outside of the municipality.

A-3339-22

Although defendant's vehicle was "not far" from the Toms River border, nothing in the record shows it was located in a contiguous structure or conjoining area when stopped and searched, thereby extending its territory. We have definitively interpreted predecessor jurisdictional statutes of near-identical wording as those now in effect.

> A warrant issued by the judge of the Municipal Court of Aberdeen Township for the search of premises situated in the Borough of Union Beach, the issuing judge not then being designated or authorized to officiate as acting judge of the Municipal Court of Union Beach, is outside the territorial jurisdiction and exceeds the authority of the issuing judge and, as such, is illegal and void. N.J.S.A. 2A:8-20; R. 3:5-1; Eleuteri v. Richman, 26 N.J. 506 (1958).
>
> [State v. Bell, 166 N.J. Super. 143, 144 (App. Div. 1979).]

We have not been presented with case law supporting the State's suggestion that we relax jurisdictional limitations in recognition of a vehicle's inherent mobility. And we decline to do so here. Any apparent flexibility is exercised only insofar as police powers are concerned. Thus, in Gadsden, we did not suppress evidence seized by police incident to an arrest outside of their statutorily limited jurisdiction in a contiguous municipality. 303 N.J. Super. at 504. The Gadsden court held the extra-jurisdictional arrest "was of a procedural or technical nature, and did not rise to the level of a violation of any of Gadsden's

constitutional rights." Id. at 503. Because a Toms River municipal judge issued a warrant for the search of "a certain vehicle within the TOWNSHIP OF TOMS RIVER[,]" the officers' execution of that warrant in another town was unauthorized and void.

In the alternative, the State maintains that the witnessed drug transactions served as a basis to stop and search defendant's vehicle. The case law and statutes on which the State rests its alternative justification for defendant's arrest and search give municipal police officers authority to arrest for a crime committed in an officer's presence anywhere within the State. See State v. Montalvo, 280 N.J. Super. 377, 381 (1995); State v. O'Donnell, 192 N.J. Super. 128, 130 (App. Div. 1983); N.J.S.A. 40A:14-152 to -152.2.

On this score, Taranto was specifically asked about the legal basis for defendant's arrest.

> DEFENSE COUNSEL: Okay. And, based on your investigation, did you believe that Mr. Galloway was headed into Toms River at that time on August 7th of 2020?
>
> TARANTO: If he had continued westbound on 70, yes, he would have entered Toms River.
>
> DEFENSE COUNSEL: Okay. What about if he had gone south on 9?
>
> TARANTO: He would have entered Toms River.

13

DEFENSE COUNSEL: Are those the only two major roadways that are in this area as depicted on 5-3?

TARANTO: Yes.

DEFENSE COUNSEL: Okay. So at this time was there an attempt to stop Mr. Galloway's vehicle, that silver Jaguar, on -- as he traveled westbound on 70?

TARANTO: Yes, he was continuing westbound on 70. He then entered the ramp, which I believe is on Locust to travel towards Route 9 –

DEFENSE COUNSEL: Uh-huh.

TARANTO: - from Locust. So at that point it was decided that we would attempt to effectuate the motor vehicle stop of -

DEFENSE COUNSEL: Why did you make the decision to stop him at this time?

TARANTO: At this time, it was made because he could have either traveled -- continued travelling south into Toms River or if he decided to travel 9 north back into Lakewood, it was further into Lakewood, and we probably would not have stopped the vehicle had he continued further north into Lakewood.

DEFENSE COUNSEL: Detective, why at this point didn't you just call off the surveillance for the day?

TARANTO: Couple reasons. One being he was so close to Toms River. We didn't have an issue with making the stop if it ended up being a little bit into Lakewood. And, additionally, we had, from our training and experience, believed we had just seen three narcotics-related transactions occur prior to this

14

activity.  So, it was decided that we would stop him while we could.

DEFENSE COUNSEL:  Okay. Would it at all have been something you would have considered to stop your pursuit and get a search warrant from a Lakewood judge at that point?

TARANTO:  No.

DEFENSE COUNSEL:  Why not?

TARANTO:  The vehicle -- we hadn't attempted to get a search warrant for his residence.  We were attempting to just get a search warrant on his vehicle.  I know vehicles are mobile.  They could easily travel in and out of your area that you're -- such as Toms River, he could have easily traveled in and out of Toms River and it was still a valid warrant at that point.

DEFENSE COUNSEL:  So if -- so at that point your stop was based on a search warrant.  Correct?

TARANTO:  That's correct.

[Emphases added.]

In this circumstance, we do not find the statutory authority or case law cited by the State to be persuasive because the TRPD effectuated defendant's arrest on the basis of a search warrant executed outside of that warrant's jurisdiction — a basis we have determined to be invalid.  As Taranto's testimony clearly establishes, the officers stopped defendant's car not to arrest him based on outstanding arrest warrants or purported drug transactions they had witnessed

15

earlier that day, but to prevent him from going further into Lakewood and further beyond the reach of the search warrant where they "probably would not have stopped the vehicle."

Nothing in the record shows the police did not have readily available means to apply for a warrant from a superior court judge or a municipal court judge from Lakewood. By electing to seek, obtain, and proceed on a warrant to search from a court of limited jurisdiction in Toms River, the TRPD officers were consequently confined to its geographic limitations. We do not relax those constitutionally recognized limitations for the sake of expedience.

Having held the principal basis for the search of defendant's vehicle invalid, we next consider the State's alternative argument, raised but not adjudicated before the trial court, and renewed before this court on appeal. Our jurisprudence has long held that we do not rely on the subjective appraisal of police officers in determining whether a seizure and search is reasonable under the Fourth Amendment and under Article 1, paragraph 7 of the New Jersey Constitution. State v. Bruzzese, 94 N.J. 210, 219-20 (1983). Instead, we rely on objective considerations. Toward that end, we remand this matter for the trial court to conduct further proceedings to determine whether the officers had an objective, legally justifiable basis to stop defendant's vehicle to affect arrest and a warrantless search.

16

Reversed and remanded for proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3339-22