790 A.2d 206 (2002)
347 N.J. Super. 382
STATE of New Jersey, Plaintiff-Respondent,
v.
Mario SIRIANNI, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued January 23, 2002.
Decided February 6, 2002.
*208 Stephen W. Kirsch, Assistant Deputy Public Defender, argued the cause for appellant, (Peter A. Garcia, Acting Public Defender, attorney; Mr. Kirsch, of counsel and on the brief).
Jeanne Screen, Deputy Attorney General, argued the cause for respondent, (Peter C. Harvey, Acting Attorney General, attorney; Ms. Screen, of counsel and on the brief).
Before Judges WEFING, PARRILLO and BILDER.
*207 The opinion of the court was delivered by PARRILLO, J.A.D.
Following denial of his motion to suppress evidence, and after a bench trial, defendant Mario Sirianni was found guilty of third degree possession of LSD, in violation of N.J.S.A. 2C:35-10a(1). He was sentenced to five years probation. Appropriate fines and fees were imposed and his driving privileges were forfeited for six months. Defendant now appeals from the denial of his motion to suppress evidence. We affirm.
These are the salient facts. In the early morning of June 6, 1998, Bellmawr police were conducting a stakeout of a home on West Browning Road where they believed a homicide suspect would return. The two officers did not have detailed information about the suspect, beyond his name and a limited description of a white male.
At approximately 2:20 a.m., the officers observed defendant drive a vehicle into the area and park along the curb of West Browning Road, a door or two down and on the opposite side of the street from the house under surveillance. Defendant, however, did not emerge from the car. Instead, he dimmed the lights and reclined back on his seat, appearing to the officers to be observing their activities.
The officers requested the radio dispatcher to "run" the license plate of the vehicle and then approached the car to investigate. They observed defendant apparently asleep, and something was burning in the ashtray. There was also a black bag on the front passenger seat in plain view. The officers tried to get defendant's attention by knocking on the window and, after several attempts, defendant opened the door, appearing startled and disoriented. It then became evident that the substance burning in the ashtray was incense.
The officers, one of whom was wearing a police uniform, identified themselves as police and asked defendant for his name and credentials. Defendant responded that his name was Mario Sirianni and that he lived at his friend's house where defendant had parked in front. By then, the officers had learned from the computer check that the car was registered to "Mario Sirianni" with a Camden post office box address. As defendant looked for his credentials, he leaned to open the glove compartment, whereupon the officers observed what they recognized as marijuana in a glassine bag sticking out of the left pocket of defendant's jacket. Defendant exited the vehicle at the officers' request and was arrested. A subsequent pat-down search incident to the arrest revealed another bag of marijuana in defendant's pants pocket.
Because the officers still lacked positive personal identification of defendant, they asked him again where his identification was. Defendant replied that his identification was in the black bag on the front passenger seat. The officers then opened *209 the bag to retrieve the identification and discovered a bag of marijuana as well as what appeared to be strips of paper saturated with LSD. The officers found defendant's driver's license, which indicated a Camden address, in the black bag.
As noted, the trial judge denied defendant's motion to suppress:
The question then is was criminal activity afoot or under the community caretaking standard was this a situation that required at least an investigation by approaching the defendant ... The officer did approach the vehicle and he observed Mr. Sirianni seated with his head back and it appeared that he was asleep but he didn't know whether he was faking. There was an unknown substance, which was later determined to be incense, burning in the ashtray. Even though there was a repeated knock on the window, the defendant didn't awaken until he finally did and it was in a very surprised fashion and at that point, as the officer testified, he sprung the door open. So now there is a clear view into the vehicle.
The officer ran a tag search on the vehicle and it was reported in the name of Sirianni, I would take it Mario Sirianni, with a post office box address in Camden. Yet when speaking to Mr. Sirianni and asked why he was in the area, he said he lived or was staying at 911 West Browning Road. There is a distinction between 911 West Browning Road and Camden. Cause one is Bellmawr, the other is Camden.
I warrant, at this point, there is the Lark situation because there is no arrest and to go any further because the defendant has been asked now for his identification and while he attempted to find it, that's when the contraband was observed by Officer Kenney. He did notice, as the defendant leaned across the vehicle to go into the glove compartment, a glassine bag in his jacket pocket. And through his experience and his training, he recognized this to be marijuana.....
And consequently asking the defendant to step out of the vehicle was proper and placing him under arrest I find was appropriate.
The sole issue defendant raises on appeal is:
WHETHER THE TRIAL COURT'S DENIAL OF DEFENDANT'S MOTION TO SUPPRESS COULD BE REVERSED ON THE GROUNDS THAT THE POLICE REQUEST FOR CREDENTIALS REQUIRED REASONABLE SUSPICION THAT DEFENDANT HAD COMMITTED A CRIMINAL OFFENSE.
Police-citizen encounters generally occur at three distinct levels, but only two require constitutional justification. "It is well-settled that the police may arrest only if they have probable cause; may stop for brief investigatory questioning if they have an articulable, reasonable basis for suspicion; and they may make an inquiry without any grounds or suspicion." State v. Rodriguez, 336 N.J.Super. 550, 558-59, 765 A.2d 770 (App.Div.), certif. granted, 170 N.J. 84, 784 A.2d 717 (2001). See also Florida v. Royer, 460 U.S. 491, 497-99, 103 S.Ct. 1319, 1324-25, 75 L.Ed.2d 229, 236-37 (1983) (plurality opinion); State v. Maryland, 167 N.J. 471, 482-84, 486-87, 771 A.2d 1220 (2001); State v. Alexander, 191 N.J.Super. 573, 576, 468 A.2d 713 (App. Div.1983), certif. denied, 96 N.J. 267, 475 A.2d 570 (1984). Mere inquiries require no constitutional justification. Ibid.; State v. Stovall, 170 N.J. 346, 359, 788 A.2d 746 (2002); State v. Dangerfield, 339 N.J.Super. 229, 236, 771 A.2d 642 (App.Div.2001). On-the-spot questioning involves neither detention nor seizure in the constitutional *210 sense. State v. Sheffield, 62 N.J. 441, 447, 303 A.2d 68, cert. denied, 414 U.S. 876, 94 S.Ct. 83, 38 L.Ed.2d 121 (1973); State v. Abreu, 257 N.J.Super. 549, 554-55, 608 A.2d 986 (App.Div.1992). Brief, non-intrusive encounters with individuals on the street or in parked cars implicate none of the privacy or security concerns engendered by discretionary police spot checks of moving vehicles. See Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). As the United States Supreme Court held in Royer:
[L]aw enforcement officials do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions.
[460 U.S. at 497, 103 S.Ct. at 1324, 75 L.Ed.2d at 236.]
To be sure, "a single encounter may escalate from `inquiry' to `stop' to `arrest' so that the criteria for each category must be applied as the situation shades off from one category to the other." Alexander, supra, 191 N.J.Super. at 577, 468 A.2d 713 (internal citations omitted). An inquiry may be converted into an investigative detention if, given the totality of the circumstances, a reasonable person were to believe he was not free to leave. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Citarella, 154 N.J. 272, 280, 712 A.2d 1096 (1998); State v. Tucker, 136 N.J. 158, 164, 642 A.2d 401 (1994); State v. Davis, 104 N.J. 490, 498, 517 A.2d 859 (1986); State v. Costa, 327 N.J.Super. 22, 31, 742 A.2d 599 (App.Div. 1999); State v. Contreras, 326 N.J.Super. 528, 538, 742 A.2d 154 (App.Div.1999); State v. Morrison, 322 N.J.Super. 147, 152, 730 A.2d 447 (App.Div.1999). In determining whether the encounter passes constitutional muster, a reviewing court must assess and evaluate the totality of the circumstances surrounding the encounter. Maryland, supra, 167 N.J. at 487, 771 A.2d 1220; Davis, supra, 104 N.J. at 505, 517 A.2d 859. As always, the touchstone of the Fourth Amendment of the United States Constitution, as well as Article I, ¶ 7 of the New Jersey Constitution, is reasonableness. State v. Zapata, 297 N.J.Super. 160, 171, 687 A.2d 1025 (App.Div. 1997), certif. denied, 156 N.J. 405, 719 A.2d 637 (1998).
Our Supreme Court in Davis explained the difference between a field inquiry and an investigative stop:
"[t]he critical inquiry would be whether the policeman, although perhaps making inquiries which a private citizen would not be expected to make, has otherwise conducted himself in a manner consistent with what would be viewed as a nonoffensive contact if it occurred between two ordinary citizens." W.R. Lafave, 3 Search and Seizure, § 9.2 at 53. Thus, an officer would not be deemed to have seized another if his questions were put in a conversational manner, if he did not make demands or issue orders, and if his questions were not overbearing or harassing in nature. Id. at 53-54.
[104 N.J. at 497 n. 6, 517 A.2d 859.]
"While most citizens will respond to a police request, the fact that people do so, and do so even without being told that they are free not to respond, hardly eliminates the consensual nature of the response." State v. Hickman, 335 N.J.Super. 623, 635, 763 A.2d 330 (App.Div.2000) (quoting Immigration & Naturalization Serv. v. Delgado, 466 U.S. 210, 216, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247, 255 (1984)).
On the other hand, authoritative questions that presuppose criminal activity or are otherwise indicative of criminal suspicion, *211 thus making the suspect aware he is the focus of a particularized investigation, may be considered as part of the totality of circumstances in determining whether a field inquiry has escalated into an investigatory stop. Rodriguez, supra, 336 N.J.Super. at 563-64, 765 A.2d 770. See also State ex rel. J.G., 320 N.J.Super. 21, 31, 726 A.2d 948 (App.Div.1999) (finding that asking questions such as whether you "do not have anything you shouldn't" converts an inquiry into a Terry stop); Costa, supra, 327 N.J.Super. at 31, 742 A.2d 599 (finding that questions such as "what are you doing" and "[a]re you doing something that you're not suppose to be doing out here" convert a benign field inquiry into a Terry stop); Contreras, supra, 326 N.J.Super. at 540, 742 A.2d 154 (concluding that asking the defendants whether they had contraband on them converted a field inquiry into an investigative detention). The fact remains, however, that classification of a particular encounter, for constitutional purposes, necessitates "careful examination of the facts in each case, to determine, and balance, the seriousness of the criminal activity under investigation, the degree of police intrusion, and the extent of the citizen's consent, if any, to that intrusion." Rodriguez, supra, 336 N.J.Super. at 559, 765 A.2d 770 (quoting State v. Maryland, 327 N.J.Super. 436, 449, 743 A.2d 876 (App.Div.2000), rev'd on other grounds, 167 N.J. 471, 771 A.2d 1220 (2001)). See also Alexander, supra, 191 N.J.Super. at 576-77, 468 A.2d 713.
Despite the well-settled principle that measures the reasonableness of official action against the totality of the circumstances, defendant nevertheless suggests a per se rule that, before requesting identification from a person who is lawfully in a public place, police are constitutionally required to have a reasonable suspicion that this person has committed a crime. No such litmus-paper test exists in this State or in any of the jurisdictions surveyed. See W.R. LaFave, 4 Search and Seizure, § 9.3(a), 97-98 n. 45 (3d ed.1996). On the contrary, the rule is that a police request for identification does not, by itself, constitute a seizure or detention within the meaning of the Fourth Amendment. See, e.g., Florida v. Bostick, 501 U.S. 429, 434-35, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389, 398 (1991); Immigration and Naturalization Serv. v. Delgado, 466 U.S. 210, 216, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247, 255 (1984); Royer, supra, 460 U.S. at 501, 103 S.Ct. at 1326, 75 L.Ed.2d at 238-39; United States v. Castellanos, 731 F.2d 979, 983 (D.C.Cir.1984); Gomez v. Turner, 672 F.2d 134, 144 (D.C.Cir.1982); United States v. Wylie, 569 F.2d 62, 66-68 (D.C.Cir.1977),cert. denied, 435 U.S. 944, 98 S.Ct. 1527, 55 L.Ed.2d 542 (1978). State courts that have addressed this issue have held similarly. See, e.g., Hammons v. State, 327 Ark. 520, 940 S.W.2d 424, 428 (1997); People v. Grant, 217 Cal.App.3d 1451, 266 Cal.Rptr. 587, 592-93 (1990), review denied; People v. Paynter, 955 P.2d 68, 74 (Colo.1998); Purce v. United States, 482 A.2d 772, 775 (D.C.App.1984); Cliett v. State, 722 So.2d 916, 917-18 (Fla.Dist.Ct. App.1998); Quinn v. State, 268 Ga. 70, 485 S.E.2d 483, 485 (1997); State v. Tsukiyama, 56 Haw. 8, 525 P.2d 1099, 1100-01 (1974); State v. Reason, 263 Kan. 405, 951 P.2d 538, 543-44 (1997); State v. Johnston, 85 Ohio App.3d 475, 620 N.E.2d 128, 130 (1993); State v. Daniel, 12 S.W.3d 420, 427 (Tenn.2000); State v. Jackson, 805 P.2d 765, 768 (Utah Ct.App.1990), cert. denied, 815 P.2d 241 (Utah 1991); State v. Arneson, 2001 WL 1658939, at *2 (Wis.Ct.App. Dec.28, 2001).
New Jersey cases are in accord with this view. See Alexander, supra, 191 N.J.Super. at 578, 468 A.2d 713 (citing *212 Gomez v. Turner, 672 F.2d 134, 142-44 (D.C.Cir.1982) for the proposition that intrusiveness of routine police request for identification in a public place with no show of authority other than officer's presence is so slight as to be a mere inquiry requiring no articulable basis). We recently stated in State v. Stampone, 341 N.J.Super. 247, 775 A.2d 193 (App.Div.2001), where a police officer approached an individual in a parked car, engaged him in voluntary conversation, and made a general request for identification, that the individual had remained free to refuse. Id. at 252, 775 A.2d 193. But see State v. Egan, 325 N.J.Super. 402, 410-11, 739 A.2d 469 (Law Div.1999). We see no reason to depart from the general rule that a request for identification does not, in and of itself, transform a field inquiry into a Terry stop. A mere request for identification, without more, by a police officer does not invoke "detention" in the constitutional sense. See Maryland, supra, 167 N.J. at 483, 771 A.2d 1220; Davis, supra, 104 N.J. at 497, 517 A.2d 859. In this context, we continue to adhere to the general standard of reasonableness, measured against the totality of the circumstances including, in the mix, the seriousness of the criminal activity and the degree of police intrusion involved.
Judged by this standard, the police officer's action in requesting identification from defendant required no constitutional justification. Considering the seriousness of the situationduring a police stakeout to capture a homicide suspect, defendant pulls up at 2:20 a.m., parks his vehicle directly across from the surveillance location, in a neighborhood in which he apparently did not live, and remains in the car apparently observing police activitythe officers acted reasonably in approaching the vehicle and requesting defendant's name and identification. Indeed, under the circumstances, the officers would have been derelict in their duties if they had failed to investigate these events and whether, in fact, defendant was in any way connected to the homicide under investigation. Maryland, supra, 327 N.J.Super. at 450, 743 A.2d 876. In such a situation, a credentials request is a reasonable and proper course. Id.; Sheffield, supra, 62 N.J. at 446, 303 A.2d 68.
It also involved a minimal degree of intrusion in this case. The encounter never escalated into an investigative detention and never extended beyond a mere request for identification until the marijuana was seen in plain view, at which point probable cause for arrest existed. Before then, however, there were no restraints on defendant's movement and nothing in the encounter conveyed to defendant that he was not free to refuse the officers' request. On the contrary, the approach was non-offensive. No demands or orders were issued. Nor was the police conduct overbearing or harassing. The officers' request for identification was non-accusatory and contained no presupposed suspicion of criminal conduct that could convey to defendant that he was the subject of a particularized investigation. The exchange appears to have been unremarkable and non-confrontational: the officers knocked on the car window and, after defendant awoke and opened the door, they asked for his name and identification; in reply, defendant gave his name, responded that he lived across the street at the home of a friend, and leaned over to retrieve his driving credentials. Under the circumstances, we conclude that the officers' conduct did not require reasonable suspicion or other constitutional justification.
Since we conclude that both the initial approach and arrest of defendant were lawful, evidence disclosed pursuant to both a search of his person incident to his arrest *213 and a search of the black bag inside the vehicle, which defendant does not challenge independently, was not the fruit of the poisonous tree. See Wong Sun v. United States, 371 U.S. 471, 484, 83 S.Ct. 407, 416, 9 L.Ed.2d 441, 453 (1963); State v. Pante, 325 N.J.Super. 336, 346-47, 739 A.2d 433 (App.Div.1999), certif. denied, 163 N.J. 76, 747 A.2d 285 (2000).
Affirmed.