NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0677-14T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LURDES ROSARIO, a/k/a LULU
ROSARIO,

    Defendant-Appellant.

_____

          Submitted January 19, 2016 – Decided March 10, 2016

          Before Judges Accurso and Suter.

          On appeal from Superior Court of New Jersey,
          Law Division, Monmouth County, Indictment
          No. 13-10-1732.

          Joseph E. Krakora, Public Defender, attorney
          for appellant (Al Glimis, Assistant Deputy
          Public Defender, of counsel and on the
          brief).

          Christopher J. Gramiccioni, Acting Monmouth
          County Prosecutor, attorney for respondent
          (Paul H. Heinzel, Special Deputy Attorney
          General/Acting Assistant Prosecutor, of
          counsel; Mark W. Morris, Legal Assistant, on
          the brief).

PER CURIAM

    Defendant, Lurdes Rosario, appeals from the denial of her

motion to suppress statements and physical evidence.  We affirm.

At 11:33 p.m., Patrolman Gabriel Campan was patrolling a residential area of Colts Neck known as "The Grande" when his focus was drawn to a car parked in front of a residence by the movement within of a silhouetted figure that "grabbed" his attention. The maroon vehicle was parked "head-on into the curb" as the officer pulled his cruiser seven to ten feet behind the vehicle, "blocking it in," and then activated his "alley light" for better visibility. He observed a lone occupant in the driver's seat who looked over her right shoulder at him "then turned back around heading towards the unoccupied passenger seat kind of scuffling around in the vehicle." She was "moving around fast," but he could not see what she was doing. He became "suspicious of what was happening." As he approached the vehicle, he noticed the window on the driver's side was half open. He asked the occupant, the defendant, for identification and a driver's license, which defendant supplied.

Four days earlier at the duty roll call, a "patrol notice" was circulated to the officers, based on a tip from an anonymous caller, which reported that Lurdes Rosario was distributing heroin from her house in this residential area and that she drove a burgundy Chevy Lumina. The officer did not make the connection between the patrol notice and the silhouetted figure in the burgundy vehicle at first, but he did when she produced

her identification. He also then recognized her from a prior arrest for "drug paraphernalia and possession." She did not appear to be under the influence of drugs or alcohol.

After defendant produced her driver's license, the officer asked "what she was doing." She replied she was "smoking a cigarette." He did not see one. When he asked why she had "scuffled around" on the passenger's side, defendant replied "she was putting away makeup because she just put some on." Defendant did not respond when he asked how she could do this in the dark. The officer told defendant her story "is not making sense" and then asked "if there was anything I should know about in the vehicle." He acknowledged he was referring "to anything illegal." She replied "yes" and then stated "it's the same thing you arrested me before in the past." "As soon as she said that," defendant pulled out a fur mitten that had not been visible and from that, an eyeglass case, she then opened without any request from the officer, revealing a white powdery substance that he believed to be crack or heroin and other drug paraphernalia. She was asked to step out of the vehicle and was put under arrest for possession of drug paraphernalia.

Defendant was indicted for third-degree possession of a controlled dangerous substance, cocaine, N.J.S.A. 2C:35-10(a)(1). She filed a motion to suppress the evidence seized and her statements, contending they were obtained from an

improper investigative stop and from a custodial interrogation without <u>Miranda</u>[1] warnings. The State opposed the motion, contending the evidence and statements were obtained through constitutionally valid procedures.

In a written decision denying the motion to suppress, the judge found the officer's initial interaction with the defendant was a "field inquiry," but when the officer asked defendant whether there was anything he should know about, referring to criminal activity, the field inquiry became an investigative stop.

The judge found the officer had a reasonable and articulable suspicion defendant was engaged in, or about to engage in, criminal activity. This was based on defendant's "strange" responses to the officer, that she was smoking a cigarette when none was evident and was putting on makeup in the dark, plus his knowledge of her criminal history as well as the lateness of the hour and the lack of other traffic in the area. The judge concluded defendant had voluntarily shown the drug paraphernalia to the officer without prompting.

The court found defendant was not in custody for <u>Miranda</u> purposes. She was parked outside her residence, was familiar with the officer, who had not indicated to her that the

---

[1] <u>Miranda v. Arizona</u>, 384 <u>U.S.</u> 436, 477, 86 <u>S. Ct.</u> 1602, 1629, 16 <u>L. Ed.</u> 2d 694, 725 (1966).

detention would be anything "beyond the brief period necessary to determine what defendant was doing," he did not "unholster his service weapon" or "make coercive statements to defendant."

After the motion was denied, defendant entered a conditional guilty plea to third degree drug possession and was sentenced to probationary supervision for two years consistent with the sentence recommendation and assessed fines and penalties.

Defendant raises the following issues on appeal:

> POINT I. THE COURT BELOW ERRED IN FINDING THAT AN INVESTIGATIVE DETENTION DID NOT OCCUR UNTIL OFFICER CAMPAN QUESTIONED ROSARIO. SINCE ROSARIO WAS THE SUBJECT OF AN INVESTIGATIVE DETENTION NOT JUSTIFIED BY THE TOTALITY OF THE CIRCUMSTANCES, THE COURT SHOULD HAVE GRANTED DEFENDANT'S MOTION TO SUPPRESS HER STATEMENT AND THE EVIDENCE SEIZED BECAUSE OF HER STATEMENT.

> POINT II. MS. ROSARIO'S STATEMENT TO OFFICER CAMPAN WAS THE PRODUCT OF CUSTODIAL INTERROGATION WITHOUT MIRANDA WARNINGS.

II.

Defendant appeals the trial court's decision denying her suppression motion. We defer to the trial court's factual findings unless "clearly mistaken" such that appellate intervention is necessary in the interests of justice. State v. Elders, 192 N.J. 224, 244 (2007). Our review of purely legal conclusions is plenary. State v. Goodman, 415 N.J. Super. 210, 225 (App. Div. 2010), certif. denied, 205 N.J. 78 (2011).

The Fourth Amendment to the United States Constitution and Article I, ¶ 7 of the New Jersey Constitution protect the State's citizens "against unreasonable police searches and seizures by requiring warrants issued upon probable cause 'unless [the search and seizure] falls within one of the few well-delineated exceptions.'" State v. Maryland, 167 N.J. 471, 482 (2001) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043, 36 L. Ed. 2d 854, 858 (1973)). Not every interaction between a citizen and the police implicates the Fourth Amendment's warrant requirement. An officer may conduct a field inquiry without any "grounds for suspicion." Id. at 484; see Elders, supra, 192 N.J. at 246. "A field inquiry is not considered a seizure 'in the constitutional sense so long as the officer does not deny the individual the right to move.'" State v. Rodriguez, 172 N.J. 117, 126 (2002) (quoting State v. Sheffield, 62 N.J. 441, 447, cert. denied, 414 U.S. 876, 94 S. Ct. 83, 38 L. Ed. 2d 121 (1973)). "A permissible inquiry occurs when an officer questions a citizen in a conversational manner that is not harassing, overbearing, or accusatory in nature." State v. Nishina, 175 N.J. 502, 510 (2003); see State v. Pineiro, 181 N.J. 13, 20 (2004). Merely asking for identification does not elevate a field inquiry to an investigative detention. See State v. Sirianni, 347 N.J. Super. 382, 390 (App. Div.), certif. denied, 172 N.J. 178 (2002).

An investigatory stop is considered more intrusive than a field inquiry and does implicate constitutional requirements. Elders, supra, 192 N.J. at 247. Sometimes referred to as a Terry[2] stop, an investigatory stop does not require a warrant if it is based on "specific and articulable facts which, taken together with rational inferences from those facts" provide a "reasonable suspicion of criminal activity." Ibid. (quoting Rodriquez, supra, 172 N.J. at 126 (quoting Terry, supra, 392 U.S. at 21, 88 S. Ct. at 1880, 20 L. Ed. 2d at 906)).

To evaluate whether the officer had a reasonable suspicion that criminal activity had taken place or was about to take place, a court should consider "the facts objectively and reasonably viewed in light of the officer's expertise." State v. Arthur, 149 N.J. 1, 10-11 (1997). The officer's "articulable reasons" or "particularized suspicion" is based on the officer's assessment of the totality of the circumstances. State v. Davis, 104 N.J. 490, 504 (1986). "An anonymous tip, standing alone, is rarely sufficient to establish a reasonable articulable suspicion of criminal activity." Rodriguez, supra, 172 N.J. at 127; see Alabama v. White, 496 U.S. 325, 329, 110 S. Ct. 2412, 2415, 110 L. Ed. 2d 301, 308 (1990). Rather, the police "must verify that the tip is reliable by some independent

_____

[2] Terry v. Ohio, 392 U.S. 1, 16, 88 S. Ct. 1868, 1877, 20 L. Ed. 2d 889, 903 (1968).

corroborative effort." Rodriquez, supra, 172 N.J. at 127. The officer must use the "least intrusive means necessary to effectuate the purpose" of the investigation, and the detention must "last no longer than is necessary to effectuate the purpose of the stop." State v. Coles, 218 N.J. 322, 344 (2014), (quoting State v. Shaw, 213 N.J. 398, 411 (2012)).

A field inquiry can be transformed into an investigative stop when "a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497, 509 (1980); see Rodriguez, supra, 172 N.J. at 126. The question is not dependent upon the officer's "subjective intent." Rodriguez, supra, 172 N.J. at 126. Rather, "[a]n encounter becomes more than a mere field inquiry when an objectively reasonable person feels that his or her right to move has been restricted." Ibid. "The officer's demeanor is relevant to the analysis." Ibid. There would not be a seizure "if his questions were put in a conversational manner, if he did not make demands or issue orders, and if his questions were not overbearing or harassing in nature." Ibid. (quoting Davis, supra, 104 N.J. at 497 n.6).

It is against this background that we evaluate the appeal. We agree with the trial court that the initial encounter between the officer and defendant was a field inquiry, not an investigatory detention. The officer asked for identification

and a driver's license. The mere request for this is not an investigative stop. Sirianni, supra, 347 N.J. Super. at 391. There was no testimony that his manner was overbearing or harassing. He did not draw his weapon. He did park perpendicular to defendant, approximately seven to ten feet away which prevented her from backing out, but in this case she also was parked in front of her residence allowing her access to leave. See State v. Stampone, 341 N.J. Super. 247, 252 (App. Div. 2001) (finding no Terry stop while occupant of car was free to refuse general request for information).

We agree the field investigation became an investigative stop when the officer asked whether there was anything in the vehicle that he should be aware of. Looking at the totality of the circumstances, by that point the alley light was on; the patrol car was parked behind the vehicle; the officer acknowledged he suspected criminal activity. The record supports the trial court's conclusion this had become an investigatory stop.

We further agree the record is sufficient to demonstrate a reasonable suspicion that criminal activity had occurred or was about to occur by the time the encounter had evolved into an investigatory stop. The defendant had given strange responses to the officer when he made inquiry about smoking and applying makeup in the dark. The officer recognized her from a prior

drug arrest. She was observed "scurrying" around when he pulled up behind her. The hour was late. We agree with the trial judge that all those factors combine to provide a particularized and objective basis for suspecting criminal activity.

### III.

Defendant contends she was in "custody" when she stated to the officer she was in possession of "the same thing as you arrested me before in the past" and because she did not receive a Miranda warning, the court erred in not suppressing her statement.

"Miranda 'warnings must be given before a suspect's statement made during custodial interrogation [may] be admitted in evidence.'" State v. Carlucci, 217 N.J. 129, 143-44 (2014) (quoting Dickerson v. United States, 530 U.S. 428, 431-32, 120 S. Ct. 2326, 2329, 147 L. Ed. 2d 405, 412 (2000)). An interrogation in custody means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. at 144 (quoting Miranda, supra, 384 U.S. at 444, 86 S. Ct. at 1612, 16 L. Ed. 2d at 706). Custody "is an objective determination." Ibid.; see State v. P.Z., 152 N.J. 86, 103 (1997). "The critical determinant of custody is whether there has been a significant deprivation of the suspect's freedom of action based on the objective circumstances,

including the time and place of the interrogation, the status of the interrogator, the status of the suspect, and other such factors." Carlucci, supra, 217 N.J. at 144 (quoting P.Z., supra, 152 N.J. at 103). Brief and non-coercive questioning during an investigative stop does not require the police to first give Miranda advice. See Berkemer v. McCarthy, 468 U.S. 420, 439-40, 104 S. Ct. 3138, 3150, 82 L. Ed. 2d 317, 334-35 (1984); State v. Smith, 374 N.J. Super. 425, 431 (App. Div. 2005).

Typically Miranda warnings depend upon "circumstances include[ing] the duration of the detention, the place and time of the interrogation, the nature of the questions and the language employed by the interrogator, the conduct of the police, the status of the interrogator, the status of the suspect, and other relevant circumstances." State v. Brown, 352 N.J. Super. 338, 353-56 (App. Div.) certif. denied, 174 N.J. 544 (2002).

We find no error in the trial court's application of these principles. Although the field investigation evolved into an investigatory stop, we agree that the defendant was not in custody for Miranda purposes at the time she made her statement. The trial court found the interaction with the officer "lasted . . . mere minutes" and the "exchange was less intrusive than a routine traffic stop." She was in her vehicle parked outside

her residence.  She was familiar with the officer.  He did not unholster his service weapon or make coercive statements.  An officer is not required to give <u>Miranda</u> warnings before asking questions reasonably related to dispelling or confirming suspicions that justify the detention.  <u>Smith</u>, <u>supra</u>, 374 <u>N.J. Super.</u> at 431.  The record supports that there was nothing to substantiate her argument that the statements were obtained involuntarily.  Her statement was volunteered.  "<u>Miranda</u> does not apply to volunteered statements."  <u>See</u> <u>State v. Coburn</u>, 221 <u>N.J. Super.</u> 586, 598 (App. Div. 1987), <u>certif. denied</u>, 110 <u>N.J.</u> 300 (1998).  We agree defendant was not in custody at the time the statement was made.

Affirmed.