**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1059-18T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

HASSAN A. STEPHENS, a/k/a
WILLIAMS HASSAN D.,
MCDONALD KAHEEM, and
STEVENS HASSAN,

     Defendant-Appellant.

_____

Submitted May 20, 2020 – Decided June 10, 2020

Before Judges Koblitz and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 17-02-0121.

Joseph E. Krakora, Public Defender, attorney for appellant (Brian P. Keenan, Assistant Deputy Public Defender, of counsel and on the briefs).

Lyndsay V. Ruotolo, Acting Union County Prosecutor, attorney for respondent (Meredith L. Balo, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following the denial of his motion to suppress evidence seized from his person without a warrant during a street encounter with police, defendant entered a negotiated guilty plea to unlawful possession of a controlled dangerous substance, namely cocaine, N.J.S.A. 2C:35-10(a)(1). He was sentenced in accordance with the plea agreement to a three-year term of imprisonment. Defendant now appeals from the September 24, 2018 judgment of conviction, raising the following single point for our consideration:

> THE JUDGE ERRED IN DENYING DEFENDANT'S SUPPRESSION MOTION BECAUSE THE STATE FAILED TO ESTABLISH THE CONFIDENTIAL INFORMANT'S RELIABILITY AND THE TIP PROVIDED NO BASIS OF THE CONFIDENTIAL INFORMANT'S KNOWLEDGE AND PROVIDED NO PREDICTIVE OR HARD-TO-KNOW INFORMATION TO THE DETECTIVES.

After reviewing the record and the applicable legal principles, we find no merit to defendant's contention and affirm substantially for the reasons stated in Judge John M. Deitch's comprehensive and well-reasoned written opinion issued on June 22, 2017. We add these comments.

At the suppression hearing, Elizabeth Police Department Detective Jose Martinez, a fourteen-year veteran officer with five-and-one-half-years in the Narcotics Division, testified for the State. Based on his testimony, which the

judge described as "direct," "forthright," and "credible," Judge Deitch made the following key factual findings:

> On November 16, 2016, at approximately 11:15 a.m., . . . Detectives Raul Delaprida and Jose Martinez received information from a confidential informant ("CI") that [d]efendant "was in the area of Third and Bond Streets and was in possession of CDS cocaine." . . . . According to Detective Martinez, the CI has previously given information that resulted in the execution of three search warrants, the arrest of eleven individuals, and the recovery of various types of CDS and several handguns.
>
> . . . . Defendant was known to Detective Martinez and his partner as a notorious street level drug-dealer through their service in the Narcotics Division. Similarly, the area in question was known to the detective as a notorious area for open-air drug dealing within the City of Elizabeth.[1]
>
> Detective Martinez and his partner drove their unmarked police vehicle to that area with the purpose of surveilling the block and looking for illegal activity. As they drove slowly down the street, they saw [d]efendant repeatedly looking in their direction and acting suspiciously. They believed that they had been recognized by [d]efendant, who[m] they believed had begun a "pretend" cellular telephone call to legitimize

---

[1] Martinez testified that the area was "known for gang activity and violence," as well as "open narcotics trafficking." He explained that in the previous six months, he had "been involved in approximately [twenty] arrests in that area."

3

his presence on the street.[2]  The detectives, who desired to speak to [d]efendant about his alleged conduct, left their vehicle and approached [d]efendant. Upon getting closer to [d]efendant, Detective Martinez saw a bulge in [d]efendant's left front jacket pocket and began to pat [d]efendant down. Defendant voluntarily admitted that he had [drug] paraphernalia on his person and he was immediately arrested. A more detailed search revealed contraband. . . . A review of the [contraband's packaging[3]] confirmed that it was of a size that would have been readily observable to . . . Martinez as he described in his testimony.

After applying the governing principles, the judge determined "the detectives had reasonable suspicion to conduct a Terry[4] stop." He explained:

They had received information from a previously reliable informant about [d]efendant selling drugs on Bond Street. They went to the area and found [d]efendant there – thereby partially corroborating a previously reliable source. Once on the scene, they saw [d]efendant acting suspiciously in a high-crime area. He appeared to recognize the police vehicle and

---

[2]  According to Martinez, his unmarked police car "was well known throughout the City as a narcotics vehicle," and "the license plate . . . ha[d] been posted on Facebook."

[3]  From defendant's front pocket where Martinez had observed the bulge, police seized "a black shopping bag containing a torn brown paper bag, numerous loose yellow caps, two Ziploc bags with black flower logos each containing yellow caps and two boxes of empty glass vials." From defendant's person searched incident to his arrest, "police recovered a Ziploc bag with a green butterfly logo containing [twenty-eight] glass vials with red caps containing suspected cocaine, and a plastic bag tied off in a knot containing suspected cocaine."

[4]  Terry v. Ohio, 392 U.S. 1 (1968).

A-1059-18T2

> thereafter engage[d] in behavior to avoid detection. This is ample evidence to support an "objective manifestation that the suspect was or is involved in criminal activity." The totality of the circumstances establish reasonable suspicion on the part of the detectives by a preponderance of the evidence. Their efforts to investigate [d]efendant was lawful.

Turning to the pat-down, the judge determined "the frisk" was "reasonable." He explained that "[w]hen Detective Martinez approached [defendant], he immediately observed a large bulge in [d]efendant's jacket pocket," which size "support[ed] his observation." Additionally, the judge found "[t]he detectives had probable cause to arrest [d]efendant as soon as [d]efendant stated, 'All I got on me is drug paraphernalia,'" as well as the "authority to conduct a search [of defendant's person] incident to arrest . . . and to seize the evidence found as a result of that search."

We conclude there was sufficient credible evidence in the record to support Judge Deitch's factual findings. See State v. Boone, 232 N.J. 417, 425-26 (2017) ("An appellate court reviewing a motion to suppress evidence in a criminal case must uphold the factual findings underlying the trial court's decision, provided that those findings are 'supported by sufficient credible evidence in the record.'" (quoting State v. Scriven, 226 N.J. 20, 40 (2016))). We also agree with the judge's legal conclusions, which we review de novo. See

State v. Brown, 456 N.J. Super. 352, 358-59 (App. Div. 2018) ("We owe no deference, however, to conclusions of law made by trial courts in deciding suppression motions, which we instead review de novo." (citing State v. Watts, 223 N.J. 503, 516 (2015))).

Defendant challenges the stop and pat-down, arguing the judge erred in concluding that the CI's tip and defendant's "apparent nervousness provided reasonable basis" for a stop, and "Martinez's subsequent observation of a bulge in [defendant's] pocket[] provided reasonable basis for a pat-down." Defendant asserts "the State failed to present sufficient evidence of the CI's veracity and basis of knowledge to adequately establish the reliability of the CI's tip that [defendant] was in possession of CDS."

"Police-citizen encounters generally occur at three distinct levels," field inquiry, investigative detention, and arrest, but only the latter "two require constitutional justification." State v. Sirianni, 347 N.J. Super. 382, 387 (App. Div. 2002). While "[o]n-the-spot questioning involves neither detention nor seizure in the constitutional sense," an "inquiry may be converted into an investigative detention if, given the totality of the circumstances, a reasonable person were to believe he was not free to leave." Id. at 387-88. An investigative detention, commonly referred to as a Terry stop, is a valid exception to the

warrant requirement "if it is based on specific and articulable facts which, taken together with [the] rational inferences from those facts, give rise to a reasonable suspicion of criminal activity." State v. Williams, 192 N.J. 1, 9 (2007) (quoting State v. Pineiro, 181 N.J. 13, 20 (2004)).

"The 'articulable reasons' or 'particularized suspicion' of criminal activity must be based upon the law enforcement officer's assessment of the totality of circumstances with which he is faced." State v. Nishina, 175 N.J. 502, 511 (2003) (quoting State v. Davis, 104 N.J. 490, 504 (1986)). "Such observations are those that, in view of [the] officer's experience and knowledge, taken together with rational inferences drawn from those facts, reasonabl[y] warrant the limited intrusion upon the individual's freedom." Ibid. (alterations in original) (quoting Davis, 104 N.J. at 504). "Facts that might seem innocent when viewed in isolation can sustain a finding of reasonable suspicion when considered in the aggregate." Ibid. See State v. Stovall, 170 N.J. 346, 367 (2002) ("[A] suspect's nervousness plays a role in determining whether reasonable suspicion exists.").

When an investigatory stop is based in part on a CI's tip, the State must establish the reliability of the tip "under the totality of the circumstances." State v. Smith, 155 N.J. 83, 92 (1998) (citing Illinois v. Gates, 462 U.S. 213, 238

(1983)).  The "informant's 'veracity' and 'basis of knowledge' are two highly relevant factors under the totality of the circumstances."  State v. Zutic, 155 N.J. 103, 110 (1998) (quoting Smith, 155 N.J. at 92).  However, "a deficiency in one . . . 'may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.'"  Smith, 155 N.J. at 93 (quoting Gates, 462 U.S. at 233).

Veracity may be established by the informant's past instances of reliability, "such as providing dependable information in previous police investigations."  State v. Keyes, 184 N.J. 541, 555 (2005).  A sufficient basis of knowledge may be established "if the tip itself relates expressly or clearly how the informant knows of the criminal activity."  Smith, 155 N.J. at 94.  "Even in the absence of a disclosure that expressly indicates the source of the informant's knowledge, the nature and details revealed in the tip may imply that the informant's knowledge of the alleged criminal activity is derived from a trustworthy source."  Ibid. (citing State v. Novembrino, 105 N.J. 95, 113 (1987)).

After stopping a suspect, a protective search or frisk is permissible when an officer reasonably believes the individual is "armed and dangerous."  Terry, 392 U.S. at 27.  "The search is judged by whether a reasonably prudent person

would be warranted in the belief that his or her safety or that of others was in danger," State v. Lund, 119 N.J. 35, 45 (1990), and "must 'be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.'" State v. Privott, 203 N.J. 16, 25 (2010) (quoting Terry, 392 U.S. at 29). Where "the totality of the circumstances creates an objectively reasonable concern for the officers' safety, retrieving the contents of [a] bulge from [the] defendant's person is allowable." State v. Roach, 172 N.J. 19, 29 (2002). See Lund, 119 N.J. at 46 ("[T]o 'substantial dealers in narcotics[,]' firearms are as much 'tools of the trade' as are most commonly recognized articles of narcotics paraphernalia." (quoting United States v. Oates, 560 F.2d 45, 62 (2d Cir. 1977))).

Applying these principles, based on "the totality of the circumstances," Pineiro, 181 N.J. at 23, we agree with the judge that the State met its burden to uphold the warrantless stop and ensuing search. See State v. Wilson, 178 N.J. 7, 13 (2003) ("In satisfying that burden, the State must demonstrate by a preponderance of the evidence that there was no constitutional violation."). We discern no basis to disturb the judge's finding that the initial inquiry quickly escalated into a lawful investigatory detention during which a protective search was permissible based on the detectives' observation of a bulge in defendant's

jacket pocket in a high crime area. The judge also correctly determined that the tip from a CI who had previously provided information leading to numerous arrests and seizures of contraband, corroborated by defendant's presence at the described high-crime location, the detective's observation of defendant's suspicious behavior, as well as the detective's past experience with defendant provided the detective with articulable suspicion to stop defendant. Therefore, the trial court did not err in denying defendant's motion to suppress the evidence seized.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1059-18T2