**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1303-18T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KRISTINE MACRAE,

     Defendant-Appellant.

_____

> Argued September 23, 2019 – Decided October 6, 2020
>
> Before Judges Moynihan and Mitterhoff.
>
> On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 16-08-0643.
>
> Steven E. Braun argued the cause for appellant.
>
> Christopher W. Hsieh, Chief Assistant Prosecutor, argued the cause for respondent (Camelia M. Valdes, Passaic County Prosecutor, attorney; Christopher W. Hsieh, on the brief).

    The opinion of the court was delivered by

MITTERHOFF, J.A.D.

Defendant Kristine MacRae appeals her conviction for unlawful possession of a handgun, N.J.S.A. 2C:39-5(b). Police officers arrested defendant and co-defendant Linda Sosa after uncovering an unregistered handgun, as well as drugs, in defendant's car. A grand jury indicted defendant on eight different counts related to drug possession, and she moved to suppress the physical evidence recovered from her vehicle. After the trial court denied the suppression motion, defendant pled guilty to the weapons offense. On appeal, defendant asserts that the trial judge should have granted her motion to suppress because the officers were without a sufficient basis to detain or arrest her, to remove her from her vehicle, or to search her vehicle. Defendant also asserts that the officers arrested her outside of their jurisdiction, and that the duration and scope of her detention and arrest were impermissible. After reviewing the record, and in light of the applicable law, we affirm.

We discern the following facts from the motion record. On December 10, 2015 at 1:45 p.m., the Passaic County Police Department was conducting narcotics surveillance in the Town of Passaic, in response to complaints of drug activity in the area. The surveillance was led by Detective Jason Cancel (Cancel), who was stationed in an immobile vehicle, and involved several Passaic County police officers, including Officer Ruperto Soriano (Soriano).

Cancel testified that he observed Gerard Hill, a known narcotics user and dealer, enter a Nissan occupied by a driver and passenger that had stopped in the area of Passaic and 5th Streets. Cancel notified other officers, who began to follow the Nissan. The Nissan circled the block and then dropped Hill off at Passaic and 6th Streets. Cancel witnessed Hill engage in a "suspected drug transaction" with a woman in an alleyway.

Cancel testified that officers followed the Nissan to 5th and South Streets, where it pulled up next to a Chevrolet Traverse, in which defendant was the driver and Sosa was her passenger. At this point, both vehicles were in Soriano's view from his vantage point between 150 and 200 feet away. Using binoculars, Soriano observed the drivers of the vehicles exchange "items." Soriano later testified that he saw the Nissan's driver hand over a "clear plastic bag" to defendant through the open window of the Traverse.

On cross-examination, Soriano acknowledged that he was unable to identify the bag's contents from his distance. During the exchange, no doors to either vehicle were opened, nor did any money change hands. Soriano also conceded that another vehicle was between his vehicle and the Traverse. Nevertheless, Soriano claimed he was still able to view the exchange from his vantage point.

3

Soriano testified that one officer's unmarked vehicle then passed both the Nissan and Traverse, at which time the driver of the Nissan motioned to defendant. Soriano interpreted this motion as a gesture for defendant to leave the area. The two vehicles separated, with the Traverse driving towards Wallington, Bergen County. Soriano reported his observations to Cancel, who directed him to follow the Traverse. Soriano tailed the Traverse for four blocks into Wallington, where it parked in a parking lot. At around 2:00 p.m., Soriano parked parallel to the Traverse, exited his car, and knocked on the window of the Traverse.

Soriano stated that he and two detectives then identified themselves to defendant and advised that they had conducted surveillance "in the area and that [the officers] observed . . . a suspected drug transaction." Soriano testified that defendant "spontaneously uttered that she . . . had smoked [a blunt], and . . . that there was a loaded handgun registered under her name [inside the Traverse's center console]." Soriano acknowledged that he never found a blunt in the Traverse but testified that he could smell the odor of both raw and burnt marijuana coming from the Traverse.

After defendant's unsolicited admission about the handgun, the officers removed both defendant and Sosa from the Traverse. Officers searched the

4

vehicle's center console and discovered a Glock handgun, loaded with five bullets in its magazine. Cancel then joined the other officers on scene. Cancel testified that upon arriving, he could also smell marijuana coming from the Traverse. After defendant refused to consent to a search of the car, a narcotics dog was brought to the scene. The dog "indicated" the presence of narcotics on both the driver's door and the front passenger door of the Traverse. Cancel issued defendant a ticket at 2:15 p.m. for possession of a controlled dangerous substance (CDS) in a motor vehicle. Defendant and Sosa were then arrested, transported, and held at the police headquarters.

Defendant testified to a different account of events. Defendant testified that she had been on 5th Street in Passaic to visit her mother-in-law. Defendant stated that while parked at 5th and South Street in Passaic, a friend of both defendant's and Sosa's pulled up next to the Traverse to say hello, without an exchange of a plastic bag or other items.

Defendant testified that she then drove away, pulling into the parking lot of a laundromat in Wallington to make a phone call. Defendant claimed that after making the call, she was going to pick up her children, and then go to a firing range in Belleville. Defendant explained that, while in the parking lot, officers arrived in a van, and Soriano exited the van and approached the

Traverse. Defendant testified that she told Soriano that she did not have anything, and that based on her education and background as a paralegal working in criminal matters, she would not have blurted out that she was smoking a blunt. Defendant claimed that Soriano asked her to exit the vehicle prior to learning of her weapon.

Defendant testified that after her removal, Soriano asked whether there was anything notable in her trunk. Defendant replied that she had a registered weapon for which she had a permit, and that she was on her way to a firing range. Defendant testified that the officers handcuffed both her and Sosa. Defendant also testified that Soriano then asked for her consent to search the Traverse, adding that he threatened her and Sosa with repercussions if they did not consent to a search or disclose what was in the vehicle.

Defendant testified that after the officers recovered the gun, both she and Sosa were taken into custody and transported to the police station. She testified that they were uncuffed at the police station, and that they were processed for around thirty minutes, during which time they were moved between several holding cells.

Meanwhile, it is undisputed that the Traverse was towed from the parking lot to the police headquarters. At 6:08 p.m., a warrant to search the Traverse

was approved and signed. Officers executed the warrant at 6:15 p.m., and discovered contraband in the glove compartment, center console, dashboard of the Traverse, and in defendant's purse, which was located on top of the Traverse's center console. The following day, defendant was released at around 5:00 p.m.

On November 30, 2017, the trial judge entered an order and written opinion denying defendant's motion to suppress. The judge found that defendant's detention was justified, as officers had a reasonable and articulable suspicion that both defendant and Sosa were engaged in a drug deal. Although Soriano could not identify the items exchanged, the judge determined that the officer could reasonably infer, based on his training, experience, and observations, that a hand-to-hand drug transaction had occurred. Further, the judge found Soriano to be credible, as he provided direct answers and acknowledged that there were several inconsistencies between his actual observations and his report.

The trial judge also found that the officers had probable cause to arrest defendant and Sosa at the time both were removed from the Traverse. The judge emphasized that defendant's spontaneous statements converted the officers' reasonable and articulable suspicion to probable cause to search for a handgun

in the car's center console. In that same vein, the judge found that defendant's utterance was unforeseeable and spontaneous, and that both the Traverse's mobility and the presence of the handgun implicated the automobile exception to the warrant requirement.

The trial judge also found that the officers were permitted to remove defendant and Sosa from the vehicle. The judge explained that defendant's statement denoted specific and articulable facts that would warrant heightened caution from law enforcement. The judge opined that the interest in protecting the officers' safety outweighed the inconvenience to defendant and Sosa from being removed, and thus found that the officers' reasonable heightened sense of danger justified the removal.

Additionally, the trial judge determined that, based on the complicated circumstances and heightened danger that was present, four hours was not an unreasonable period for police to investigate. The judge highlighted that the search concerned an illegal drug exchange, as well as the presence of a firearm. He found there was no indication that the delay of defendant and Sosa's detention was solely caused by the officers, and thus its duration and scope were reasonable under the circumstances.

Finally, the trial judge also found that the officers violated N.J.S.A. 40A:14-152 by pursuing defendant and Sosa into Wallington and subsequently investigating. Relying on State v. Gadsden, 303 N.J. Super. 491 (App. Div. 1997), the judge found that the officers' violation was procedural and not constitutional, and therefore did not warrant the exclusion of evidence.

On November 16, 2018, the trial judge entered a judgment of conviction and order for commitment finding defendant guilty of unlawful possession of a handgun without a permit. This appeal ensued.

On appeal, defendant raises the following arguments:

> POINT I: THE POLICE LACKED THE REASONABLE AND ARTICULABLE SUSPICION TO JUSTIFY DETAINING DEFENDANT.
>
> POINT II: THE ARREST OF DEFENDANT OUTSIDE OF THE JURISDICTION OF THE POLICE OFFICERS WAS ILLEGAL.
>
> POINT III: THE POLICE LACKED PROBABLE CAUSE TO ARREST AND REMOVE DEFENDANT FROM HER VEHICLE.
>
> POINT VI: THE DURATION AND THE SCOPE OF DEFENDANT'S DETENTION AND SUBSEQUENT ARREST MANDATES SUPPRESSION OF ALL EVIDENCE SEIZED BY THE POLICE.
>
> POINT V: EVIDENCE SEIZED FROM THE GLOVE COMPARTMENT AND THE CONSOLE SHOULD HAVE BEEN SUPPRESSED.

In our limited review of a determination of a motion to suppress evidence, State v. Handy, 206 N.J. 39, 44 (2011), we consider the trial court's underlying factual findings to which we defer "so long as those findings are supported by sufficient credible evidence in the record." State v. Elders, 192 N.J. 224, 243 (2007) (internal quotation marks omitted). Such factual determinations will not be disturbed, even if an opportunity for independent review could lead to a different conclusion. State v. Johnson, 42 N.J. 146, 162 (1964). However, whether established facts warrant the grant or denial of a suppression motion is a legal question subject to de novo review. Handy, 206 N.J. at 45. Moreover, a trial court's legal conclusions are not afforded the same deference. Ibid. "When a question of law is at stake," appellate review is plenary. State v. Mann, 203 N.J. 328, 337 (2010).

Defendant first argues that her initial detention was not justified by a reasonable and articulable suspicion that she was engaged in criminal activity. Defendant also claims that the trial judge erred in finding Soriano to be credible. We disagree.

Here, the constitutionality of defendant's initial detention turns on whether Soriano's questioning of defendant can be construed as either a field inquiry or an investigatory stop. A field inquiry is "the least intrusive encounter,"

occurring when a police officer approaches a person and asks if he or she is willing to answer some questions. State v. Pineiro, 181 N.J. 13, 20 (2004). "A field inquiry is permissible so long as the questions '[are] not harassing, overbearing, or accusatory in nature.'" Ibid. (alteration in original) (quoting State v. Nishina, 175 N.J. 502, 510 (2003)). If the officer phrases questions "in a conversational manner . . . [and] did not make demands or issue orders," such questioning would not constitute a seizure of the person. State v. Davis, 104 N.J. 490, 497 n.6 (1986). "While most citizens will respond to a police request, the fact that people do so, and do so even without being told that they are free to not respond, hardly eliminates the consensual nature of the response." State v. Sirianni, 347 N.J. Super. 382, 389 (App. Div. 2002) (quoting State v. Hickman, 335 N.J. Super. 623, 635 (App. Div. 2000)). During such a field inquiry, "the individual approached 'need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way.'" State v. Privott, 203 N.J. 16, 24 (2010) (quoting State v. Maryland, 167 N.J. 471, 483 (2001)).

An investigatory stop, unlike a field inquiry, is characterized by a detention in which the person approached by a police officer would not reasonably feel free to leave, even though the encounter falls short of a formal

arrest.  State v. Stovall, 170 N.J. 346, 355-56 (2002); see also Terry v. Ohio, 392 U.S. 1, 19 (1968).  An investigatory stop is permissible where an officer has a reasonable suspicion that the defendant is engaged in criminal activity, "based on 'specific and articulable facts . . . taken together with rational inferences from those facts.'"  State v. Rodriguez, 172 N.J. 117, 126 (2002) (quoting Terry, 392 U.S. at 21).

Although we conclude that defendant's initial detention was an investigatory stop, we reject her assertion that the officer lacked a legal basis for the stop.  Soriano testified that in the course of surveilling the area, he observed what he believed, based on his training and experience, to be drug transaction, which included an observation that the driver of the Nissan handed what appeared to be a "clear plastic bag" to defendant.  We agree with the trial judge that Soriano's observations supported a reasonable and articulable suspicion that defendant was engaged in criminal activity, justifying the initial stop.

Next, defendant asserts that the police lacked probable cause to remove defendant from her car.  We find this argument to be without merit.

"[O]nce a motor vehicle has been lawfully [detained] . . . the police officers may order the driver to get out of the vehicle without violating the

Fourth Amendment's proscription of unreasonable searches and seizures." State v. Smith, 134 N.J. 599, 611-12 (1994) (quoting Pennsylvania v. Mimms, 434 U.S. 106, 111 n.6 (1977)).[1] All that is required to order occupants of a vehicle to exit the vehicle are "specific and articulable facts that would warrant heightened caution to justify ordering the occupants to step out of a vehicle detained for a traffic violation." Id. at 618.

We concur with the trial judge's finding that officers were justified in removing defendant from the Traverse based on defendant's spontaneous admission that there was a gun in the center console, thereby warranting "heightened caution" from the officers. See id. at 618. Once Soriano was aware of defendant's weapon, the balance of interests weighed in favor of defendant's removal, as her removal was a mere inconvenience, while legitimate safety concerns permitted officers to secure her weapon. See Mimms, 434 U.S. at 111.

Next, defendant argues that police lacked probable cause both to arrest her and to search her vehicle. On both points, we disagree. An officer has probable cause to arrest where there "is a well-grounded suspicion that a crime has been

_____

[1] In Mimms, 434 U.S. at 110-11. The Supreme Court found that the justification for removing a suspect from a vehicle – the safety of the officer – was both legitimate and weighty in comparison to the "de minimis" intrusion into the driver's personal liberty by an order to get out of the car.

or is being committed." State v. Moore, 181 N.J. 40, 45 (2004) (quoting Nishina, 175 N.J. at 515). "When determining whether probable cause exists, courts must consider the totality of the circumstances[.]" State v. Jones, 179 N.J. 377, 389 (2004) (quoting Schneider v. Simonini, 163 N.J. 336, 361 (2000)). "[Our] courts have also long recognized that the smell of marijuana itself constitutes probable cause that a criminal offense ha[s] been committed and that additional contraband might be present." State v. Walker, 213 N.J. 281, 290 (2013) (quoting Nishina, 175 N.J. at 516-17).

Here, we agree with the trial judge's finding that defendant's statement to Soriano created probable cause to arrest her. See Elders, 192 N.J. at 243. Specifically, defendant's uncontroverted statements that she was in possession of a weapon and had smoked a "blunt" were thereafter corroborated by Soriano's locating her gun, and by drug-sniffing dogs alerting to the presence of drugs in defendant's car. See Moore, 181 N.J. at 45-46.

Likewise, we find that the trial judge's finding of probable cause as to the search of the Traverse was also supported by ample credible evidence. See Elders, 192 N.J. at 243. After defendant stated that she had a gun located in her center console, officers could conduct a Terry search of that location. See Michigan v. Long, 463 U.S. 1032, 1049 (1983) (the search of a passenger

14

compartment in an automobile is "permissible if the officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain control of weapons") (quoting Terry, 392 U.S. at 21); see also State v. Esteves, 93 N.J. 498, 506 (1983). Thus, the officers' search of the central console and recovery of defendant's gun were justified by a reasonable belief that the gun was located there.

Furthermore, defendant stated that she had smoked a "blunt" prior to driving, and officers smelled marijuana emanating from her car. This justified officers in bringing drug-sniffing dogs on the scene, which then indicated as to the presence of a CDS. See State v. Cancel, 256 N.J. Super. 430, 435 (App. Div. 1992) (all that is needed to justify the unintrusive use of drug-sniffing dogs for narcotics is a reasonable suspicion that contraband is present). At this point, officers were under no obligation to wait until the Traverse was impounded to search the remainder of the vehicle for drugs. See State v. Myers, 442 N.J. Super. 287, 296-97 (App. Div. 2015); see also State v. Guerra, 93 N.J. 146, 150

(1983).[2] However, out of an abundance of caution, the officers waited to recover the remaining contraband until a neutral magistrate had issued a valid warrant, thereby evincing a determination that probable cause existed. See State v. Novembrino, 105 N.J. 95, 107 (1987).

Thus, we affirm the trial judge's findings that both defendant's arrest and the search of her vehicle were supported by both a reasonable suspicion that weapons were present, and later by probable cause. See Elders, 192 N.J. at 243.

Defendant argues that the scope and duration of her detention and arrest were unconstitutional. She avers that police should have charged her with possession of a weapon and a CDS, and that her continued detention served no legitimate law enforcement purpose. Again, we disagree.

"[T]he duration of [an] investigative stop may be extended for a reasonable but limited period for investigative purposes." State v. Chisum, 236

---

[2] Simply put, a search of defendant's car for marijuana would have been justified at this time under the automobile exception to the warrant requirement. See State v. Rodriguez, 459 N.J. Super. 13, 22 (App. Div. 2019) (explaining that automobile searches are permissible where "(1) the police have probable cause to believe the vehicle contains evidence of a criminal offense; and (2) the circumstances giving rise to probable cause are unforeseeable and spontaneous") (citing State v. Witt, 223 N.J. 409, 447-48 (2015)). Moreover, the automobile exception "applies to situations involving parked and unoccupied vehicles encountered by police in public parking lots or on city streets as well as to moving vehicles stopped on the open highway." State v. Martin, 87 N.J. 561, 567 (1981).

N.J. 530, 546 (2019) (quoting State v. Coles, 218 N.J. 322, 343-44 (2014)). However, an investigatory stop may be impermissible where "it involves a 'delay unnecessary to the legitimate investigation of the law enforcement officers.'" Ibid. (quoting United States v. Sharpe, 470 U.S. 675, 687 (1985)). Continued detention "must be reasonable both at its inception and throughout its entire execution." Id. at 547 (quoting Coles, 218 N.J. at 344).

We concur with the trial judge's finding that the duration and scope of both defendant's detention and arrest were reasonable, as it was based upon ample credible evidence in the record. See Elders, 192 N.J. at 243. Here, as the trial judge found, once defendant made her inculpatory statement, the officers were justified in detaining her for a reasonable but limited period to investigate the Traverse. See Chisum, 236 N.J. at 546. Additionally, the judge found that there were no unreasonable delays on the part of the officers that were unnecessary to the officers' investigation and, consequently, defendant's initial detention was reasonable. See id. at 546-47. Further, after officers recovered defendant's weapon and smelled marijuana emanating from the vehicle, there was probable cause for an arrest and continued detention, and officers merely detained defendant at the police headquarters pending the procurement of a search warrant. Defendant was promptly released the following day, and we

agree with the trial judge that there is no indication that the officers unreasonably delayed defendant's release. See State v. Ingram, 449 N.J. Super. 94, 102-03 (App. Div. 2017) (explaining that following a defendant's arrest, a determination as to whether there is probable cause to detain the defendant pending further proceedings must be made promptly and, as a general matter, this determination is prompt if it is made within forty-eight hours of the defendant's arrest).

We thus affirm the trial judge's determination that the duration and scope of defendant's detention and subsequent arrest did not warrant the suppression of evidence.

Finally, defendant argues that because all arresting officers were employees of Passaic, Passaic County, her arrest in Wallington, Bergen County, was illegal. We disagree.

Pursuant to N.J.S.A. 40A:14-152,

> The members and officers of a police department and force, within the territorial limits of the municipality, shall have all the powers of peace officers and upon view may apprehend and arrest any disorderly person or any person committing a breach of the peace. Said members and officers shall have the power to serve and execute process issuing out of the courts having local criminal jurisdiction in the municipality and shall have the powers of a constable in all matters other than in civil causes arising in such courts.

18

We agree with defendant that her arresting officers violated N.J.S.A. 40A:14-152 by arresting her outside of their jurisdiction. However, we believe this violation to be inconsequential. In Gadsden, under similar facts, we explained "that [a] technical violation of a procedural law does not automatically render a search and seizure unreasonable and does not require the exclusion of evidence . . . [but] violations of procedural rules which assume constitutional dimensions may require the exclusion of evidence which has been seized as a result." 303 N.J. Super. 491, 505 (App. Div. 1997). We cautioned that "any repetitive, recurrent violations of N.J.S.A. 40A:14-152, with regard to extraterritorial actions of police officers, should be treated with appropriate sanctions." Id. at 506.

We determine that the officers' violation of N.J.S.A. 40A:14-152 did not warrant the exclusion of any evidence found in defendant's Traverse. While the officers were not "in the municipality" when apprehending defendant, this failure was a technical violation of a procedural law without any constitutional dimensions, and does not require suppression of any evidence obtained from the Traverse. See Gadsden, 303 N.J. Super. at 505. As we discern no repetitive or recurrent violations by Passaic County law enforcement, we are likewise unconvinced that sanctions are necessary. See id. at 506.

To the extent we have not specifically addressed any of defendant's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1303-18T2